**F I L E D**

PUBLISH

**March 6, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KUNAL PADHIAR,

       Plaintiff - Appellant,

   v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois corporation,

       Defendant - Appellee.

No. 06-1121

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 03-CV-1969-CAB-OES)**

---

Robert B. Carey (L. Dan Rector and Julie Cliff with him on the brief), The Carey
Law Firm, Colorado Springs, Colorado, for Appellant.

Sheryl L. Anderson (Suanne M. Dell and Jennifer S. Koran with her on the brief),
Wells Anderson & Race, LLC, Denver, Colorado, for Appellee.

---

Before **HENRY**, **ANDERSON**, and **HOLMES**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Plaintiff and appellant Kunal Padhiar appeals the denial of his motion for summary judgment and the grant of defendant State Farm Automobile Insurance Company's motion for summary judgment in this action seeking reformation of an automobile insurance contract. We affirm.[1]

## BACKGROUND

The Colorado legislature enacted the Colorado Auto Accident Reparations Act ("CAARA" or "No-Fault Act") in 1973. Among other things, the No-Fault Act "require[d] that a complying [automobile insurance] policy include mandatory [personal injury protection or "PIP"] benefits." Brennan v. Farmers Alliance Mut. Ins. Co., 961 P.2d 550, 552 (Colo. Ct. App. 1998). More specifically, Colo. Rev. Stat. § 10-4-706(1)[2] required an insurance company to provide:

> (b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle. . . .
> (c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training

---

[1]Simultaneously with this opinion, we are filing another case involving similar, but not identical, issues. See Hill v. Allstate Ins. Co., No. 06-1134, ___ WL ____ (March 6, 2007).

[2]The No-Fault Act was repealed in 2003.

necessary because of bodily injury arising out of the use or operation of a motor vehicle.

Furthermore, pursuant to § 10-4-706(4)(a), "[a]n insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy to an insured."

Section 10-4-707 delineates the categories of people who must receive coverage under § 706 as including "1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle." Brennan, 961 P.2d at 553.

The No-Fault Act also required every insurance company to offer optional extended PIP benefits to its insureds, in exchange for higher premiums. Thus, § 10-4-710(2)(a) provided that:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation;
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

-3-

Colo. Rev. Stat. § 10-4-710(2)(a).  Although § 710 does not specify to whom the extended coverages it provides applies, <u>Brennan</u> held that they apply to the same four categories of individuals to whom § 706 coverage applies.

The Colorado Court of Appeals held in <u>Brennan</u> that "when . . . an insurer fails to offer the insured optional coverage that satisfies [CAARA], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy."  <u>Brennan</u>, 961 P.2d at 554; <u>see also</u> <u>Thompson v. Budget Rent-A-Car Sys., Inc.</u>, 940 P.2d 987, 990 (Colo. Ct. App. 1996) ("[W]hen a policy is violative of a statute, reformation is also required to assure that coverage will meet the statutory minimums.").  Thus, in <u>Brennan</u>, because the insurance policy at issue failed to offer extended PIP benefits for injured pedestrians and the court determined that the No-Fault Act mandated coverage for such pedestrians, the court ordered the policy reformed to include such coverage.  <u>See</u> <u>Clark v. State Farm Mut. Auto. Ins. Co.</u>, 433 F.3d 703, 710 (10th Cir. 2005) (<u>Clark III</u>) ("<u>Brennan</u> and <u>Thompson</u> reformed those insurance policies to include extended pedestrian coverage that insurers should have offered under section 710.").[3]

Kunal Padhiar's father, Prabhat Padhiar, first purchased automobile insurance from State Farm in 1967.  His first State Farm agent was Bill Smith, Jr.

_____

[3]<u>Brennan</u> alerted all automobile insurance carriers that extended PIP benefits for pedestrians must be offered under § 710.

and, after Smith's death, Padhiar conducted business with Gary Wilcox's State Farm insurance agency.

On February 1, 2001, Kunal Padhiar was involved in an automobile accident which caused him serious injuries. He was in a car, a 1993 Infinity, for which his father had applied for insurance in November 1993. The application form contains a section for the applicant to select one of several available PIP coverages. Prabhat Padhiar had checked the box for P1 PIP coverage, which was the mandatory minimum PIP coverage required by Colorado law. Based on Prabhat's application, State Farm issued the Padhiars an insurance policy numbered 345-8967-E03-06 covering their 1993 Infinity. That policy was amended by endorsements in October 1998, 1999 and 2000 and was thereafter assigned policy number 345-8967-E03-06A. At all times the policy contained P1 PIP coverage.

When the policy was initially sent to the Padhiars, a policy form accompanied it which contained, *inter alia*, a schedule of all available PIP coverages and a side-by-side comparison of the benefits and costs of each one. State Farm also sent to the Padhiars Auto Renewal Notices, which allowed them to renew their policy for the subsequent six-month period. Beginning in October 1994, State Farm sent a summary disclosure form to all of its policyholders, including the Padhiars, with each Auto Renewal Notice. In March 1995, State

Farm sent to the Padhiars a revised, but substantially similar, summary disclosure form which described all major available coverages, including PIP coverages. After describing the mandatory minimum PIP coverage, the form expressly stated "Optional personal injury protection coverages also are available." Appellant's App. Vol. II at 414.

In April 1998, State Farm sent to the Padhiars an Auto Renewal Notice containing the following:

> **HIGHER PERSONAL INJURY PROTECTION COVERAGE LIMITS ARE AVAILABLE**
> You can purchase higher Personal Injury Protection coverage limits with no deductible.
> > Coverage P4 semi-annual premium=$146.40
> > Coverage P8 semi-annual premium=$142.08
> See the enclosed News and Notes article for an explanation of these coverages.

Id. at 443. The enclosed "News and Notes" newsletter referenced in the above notice provided the following further description of the enhanced PIP coverages which were available:

> **Higher PIP coverage limits are available.**
> Colorado auto insurance law requires that you purchase at least the minimum level of personal injury protection (PIP or no-fault) coverage. This coverage is called "P1" on your premium notice. It includes mandatory minimum coverage limits for medical and rehabilitation expenses, loss of income, essential services, and death resulting in injuries sustained in a motor vehicle accident.
>
> Policyholders have the option to choose higher levels of PIP coverage—two of which are P8 and P4 coverages—for an additional premium.

> **P8 coverage** – P8 coverage has an aggregate limit of $200,000. This limit is the most we will pay for all no-fault benefits combined (medical and rehabilitation expenses, loss of income, essential services and death compensation).
>
> The medical expenses benefit does not have a time limitation (unlike P1, which is limited to five years), and you can recover up to $200,000 for medical expenses (unless part of your aggregate limit was used for other no-fault benefits). The other no-fault benefit provisions have limitations, in addition to being subject to the aggregate limit.
>
> **P4 coverage** – This coverage provides the same benefits as P8, except that it provides broader loss of income benefits. It pays 100% loss of income up to $125 a week, and up to 85% of loss of income over $125. This benefit is subject to the aggregate limit of $200,000. In contrast, P8 and P1 coverages limit loss of income benefits to $400 per week, up to a maximum of 52 weeks.
>
> Your enclosed renewal notice quotes the premium for P4 and P8 coverages with no deductible. If you are interested in purchasing either of these coverages, please contact your State Farm agent.

Id. at 450. In February 1998 and August 1998, State Farm sent substantially similar materials to the Padhiars in connection with their insurance for their 1993 Honda.

In March 1999, State Farm sent to the Padhiars a policyholder notice called "Important Notice About No-Fault Coverage Changes." It included Endorsement 6850AJ, which, in response to the Colorado Court of Appeals' decision in Brennan, immediately removed any limitation on recovery of enhanced PIP benefits by injured pedestrians. The notice also indicated that certain no-fault coverages would change when Endorsement 6850AJ took effect, including the

-7-

elimination of P6, P9 and P10 PIP coverages and the extension of time for the recovery of PIP rehabilitation expenses under P1 PIP coverage. The Endorsement further included a schedule listing all PIP coverages and providing side-by-side comparisons of the benefits and limits of each type of coverage.

In March 2000, State Farm sent to the Padhiars a policyholder notice called "Important Notice Regarding Your No-Fault Coverage." It included Endorsement 6906, which expressly stated that, unless the Padhiars purchased P4 or P8 enhanced PIP coverages, any PIP medical benefits available to the Padhiars under their policy would be limited to five years. In late September or early October 2000, State Farm sent to the Padhiars yet another policyholder notice called "Important Notice Regarding Changes to Your Policy," along with Endorsement 6906.1. This Endorsement again explained the limits to coverage unless enhanced (P4 and P8) PIP coverages were purchased. The Padhiars continued to renew their policy with the minimum P1 PIP coverage.

As indicated, Kunal Padhiar was in an accident involving the 1993 Infinity in February 2001. He received and exhausted all P1 PIP benefits provided by the insurance policy as written. After exhausting all available P1 PIP coverage, Padhiar demanded reformation of the insurance contract to provide him with higher PIP benefits. He argued that reformation was necessary because State Farm had violated CAARA by failing to offer the Padhiars enhanced PIP benefits

as required by Colo. Rev. Stat. § 10-4-710. Padhiar also asserted claims for breach of contract and bad faith, based upon State Farm's refusal to provide PIP benefits in excess of the P1 PIP coverage contained in his parents' policy.

The district court bifurcated the issue of reformation from the issue of damages and stayed discovery regarding damages until it determined the threshold reformation claim. State Farm then filed a motion for summary judgment, and Padhiar filed a motion for partial summary judgment. The district court ultimately granted State Farm's motion and denied Padhiar's motion. The district court held that the writing requirements of Colo. Rev. Stat. § 10-4-706(4)(a) do not apply to § 10-4-710 and, further, that, even if the writing requirements did apply to § 710, State Farm complied with them by providing adequate written notification of the availability of enhanced PIP benefits. Further, the court held that State Farm had made a legally sufficient offer of enhanced PIP coverages under § 710.

Padhiar appeals, arguing: (1) the district court erred in finding that the writing requirements of § 706 did not apply to offers of enhanced PIP benefits under § 710 and, even if those requirements did apply, that State Farm complied with those requirements; and (2) the district court erred in holding that State Farm had made a legally sufficient offer of enhanced PIP benefits under § 710.

**DISCUSSION**

In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims, "but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." Eck v. Parke, Davis & Co., 256 F.3d 1013, 1016 (10th Cir. 2001). Accordingly, "[w]e review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." Gwinn v. Awmiller, 354 F.3d 1211, 1215 (10th Cir. 2004). "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). We examine the record in the light most favorable to the non-moving party.

**I. Written requirement**

As indicated, under Colo. Rev. Stat. § 10-4-706(4)(a) "[a]n insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy to an insured." Section 706 involves the mandatory minimum PIP coverages. Section 710, involving the optional extended PIP coverages, states that "[e]very insurer shall

offer for inclusion" the optional coverages. Padhiar argues that the explicit

"written explanation" requirement in § 706 applies equally to the offer of optional

extended PIP coverages under § 710. The district court held it did not. It noted

that the statute states that companies issuing policies "providing coverages as set

forth in this section" must provide written explanations, and the only coverages

detailed in § 706 are the minimum PIP coverages. "By its own terms, section

10-4-706 limits the written explanation requirement to minimum PIP coverages,

not coverages set forth in different sections of the Act." Order at 8, Appellant's

App. Vol. II at 682.[4] The district court further held, however, that even if a

written requirement did apply, State Farm complied with it because it "did

provide written notice of enhanced PIP coverages that were available to the

Padhiars." Id.

We need not resolve whether insurance companies must provide written

explanations of optional enhanced PIP coverages because we agree with the

district court that, whether or not written notice was required, State Farm in fact

provided written notice that enhanced PIP coverages were available and

explanations of the basic optional enhanced coverages available. As our factual

---

[4]At least three other district courts have agreed that § 706's written explanation requirement has no application to § 710. See Stickley v. State Farm Mut. Auto. Ins. Co., 402 F. Supp. 2d 1226 (D. Colo. 2005); May v. Travelers Prop. Cas. Co., 2006 WL 2784864 (D. Colo. Sept. 26, 2006); Breaux v. American Mut. Ins. Co., 387 F. Supp. 2d 1154 (D. Colo. 2005).

-11-

recitation indicates above, State Farm sent the Padhiars multiple documents, notices and other mailings which specifically notified them of the availability of enhanced PIP benefits. The Padhiars do not claim they did not receive all of these mailings. We accordingly affirm the district court's conclusion "as a matter of law[] that State Farm did provide written notice of enhanced PIP coverages that were available to the Padhiars." Id. at 686.

## II. Sufficiency of evidence of offer

As indicated, § 710 states that an insurer "shall offer" enhanced PIP benefits for inclusion in a complying insurance policy. The statute does not define "offer." In Brennan, the Colorado Court of Appeals stated that "all that is required is that the insurer *offer* these extended benefits." Brennan, 961 P.2d at 554. In Fazio v. State Farm Mut. Auto. Ins. Co., 55 P.3d 229, 231 (Colo. Ct. App. 2002), the court stated that "[t]he plain meaning of this language is that a named insured who has minimum PIP coverage under § 10-4-706 must be offered an opportunity to purchase certain types of enhanced PIP coverage."

In an unpublished decision, our court, in determining whether the insurer had fulfilled its duty to offer optional extended PIP coverage under § 710, applied the test set out by the Colorado Supreme Court in Allstate Ins. Co. v. Parfrey, 830 P.2d 905, 913 (Colo. 1992). Johnson v. State Farm Mut. Auto. Ins. Co., 158 Fed.

Appx. 119 (10th Cir. 2005) (unpublished). Parfrey involved the requirement imposed on insurance companies by Colo. Rev. Stat. § 10-4-609(b)(2) to offer higher than the statutory minimum in uninsured or underinsured motorist coverage. We do not rely on unpublished opinions as authoritative precedent. However, we take this occasion to adopt and publish the following language from an unpublished decision. In analyzing "the nature and scope of an insurer's duty" the Colorado Supreme Court "determined that the insurer must perform its duty of notification 'in a manner reasonably calculated to permit the [insured] to make an informed decision on whether to purchase . . . coverage higher than the minimum statutory liability limits.'" Johnson, 158 Fed. Appx. at 121 (quoting Parfrey, 830 P.2d at 913). Parfrey elaborated on the proper test for determining whether an insurer has performed its duty to notify:

> In determining whether an insurer has fulfilled its statutory duty, a court may appropriately consider such factors as the clarity with which the purpose of . . . coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of . . . coverage would be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

Parfrey, 830 P.2d at 913. "In the final analysis," the sufficiency of the offer "must be resolved under the totality of the circumstances." Id. at 914.

Whether we apply the specific factors set out in Parfrey, or just consider the ultimate test to which the Parfrey factors were directed—totality of the

-13-

circumstances—we affirm the district court's conclusion that State Farm met its obligation to offer to the Padhiars optional enhanced PIP coverages.[5] As indicated above, State Farm sent numerous written notices and documents to the Padhiars which made it clear that they could purchase enhanced PIP coverages. In particular, in 1998 State Farm sent to the Padhiars the Auto Renewal Policy which specifically informed them of the premium they would have to pay for enhanced PIP coverage. The enclosed News and Notes newsletter provided a more detailed explanation. In 1999, they received a copy of the endorsement which specifically removed any limitation on the recovery of enhanced PIP benefits by pedestrians and enclosed a schedule specifically listing all available PIP coverages. In 2000, a policyholder notice along with another endorsement specifically informed them of limits to their basic PIP coverage unless they purchased enhanced PIP coverage. We note that several other courts have found that these identical mailings by State Farm provided sufficient notice under § 710. See Lust, 412 F. Supp. 2d at 1191-92; Stickley, 402 F. Supp. 2d at 1234-36;

---

[5]Not all courts agree that Parfrey should apply to the notice requirement of Colo. Rev. Stat. § 10-4-710. See, e.g., May v. Travelers Prop. Cas. Co., 2006 WL 2784864, at *3 (D. Colo. Sept. 26, 2006) (noting that it "question[s] whether the commercial reasonableness test set forth in Parfrey is the correct standard under which to evaluate the sufficiency of Travelers' offer to Mr. May [under § 710]" but further noting that "several cases from this District have utilized the Parfrey standard in similar cases"); Lust v. State Farm Mut. Auto. Ins. Co., 412 F. Supp. 2d 1185, 1191-92 (D. Colo. 2006) (noting that plaintiff's reliance on the Parfrey test to show that notice under § 710 was not clear "is unavailing").

-14-

Calderon v. State Farm Mut. Auto. Ins., Co., 2005 WL 2304735, at **3-4 (D. Colo. Sept. 21, 2005). We agree with those decisions. As the court noted in Lust, "renewal notices constitute[] a portion of plaintiff's auto insurance policy" which "the policy holder has the responsibility to read." Lust, 412 F. Supp. 2d at 1189 (citing Spaur v. Allstate Ins. Co., 942 P.2d 1261, 1265-66 (Colo. App. 1996)).

Padhiar responds that State Farm's 1998 Auto Renewal Notice and News and Notes were issued at a time when State Farm's policies, by failing to include full pedestrian coverage, did not comply with the No-Fault Act and therefor could not constitute valid offers. As indicated, Brennan pointed out the necessity for insurance policies to provide pedestrian coverage, and, after Brennan, State Farm issued Endorsement 6850AJ which removed the pedestrian limitation from the Padhiar's policy and included a complete schedule of all available coverages, including P4 and P8 enhanced benefits. Setting aside whether Padhiar would even have standing to bring a claim based on the pedestrian limitation even though he is not a pedestrian, Padhiar in fact received an offer under § 710 containing all available coverages under a policy which did not contain any pedestrian limitation. As the district court held in rejecting the identical argument in Stickley, "[State Farm] complied with section 10-4-710, at the latest, by March 1999, when it sent . . . Endorsement [6850AJ]." Stickley, 402 F. Supp.

-15-

2d at 1235.[6]  While Padhiar vociferously argues that none of these documents was sufficiently detailed or clear or descriptive enough, we find that, considering the totality of the circumstances, they satisfied State Farm's obligation to "offer" them under § 710.  We accordingly affirm the district court's decision that, as a matter of law, State Farm made a sufficient offer of optional enhanced PIP benefits under § 710.

## CONCLUSION

For the foregoing reasons, the decision of the district court denying Padhiar's partial motion for summary judgment and granting State Farm's motion for summary judgment is AFFIRMED.

---

[6]Padhiar makes in passing an argument that State Farm has waived reliance on anything other than the 1998 Renewal Notice as establishing that it offered enhanced PIP coverages as part of a compliant policy.  He argues "[w]hen counsel later asked State Farm to identify the circumstances when Padhiar received what State Farm considered to be an offer of enhanced PIP benefits for inclusion within a complying policy, State Farm cited exclusively to the date it disseminated the combined documents of the Renewal Notice and the News and Notes article in 1998."  Appellant's Op. Br. at 13.  Padhiar's reference to the record where State Farm supposedly "cited exclusively" to the 1998 Notice and article is mystifying at best.  In any event, it fails to support Padhiar's waiver argument.