FILED
United States Court of Appeals
Tenth Circuit

October 10, 2007

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VIRGIL STICKLEY,

               Plaintiff - Appellant,

    v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

               Defendant - Appellee.

No. 05-1553

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 04-N-1685 (OES))**

---

Robert B. Carey (Julie B. Cliff and L. Dan Rector, with him on the briefs), The
Carey Law Firm, Colorado Springs, Colorado, for Plaintiff - Appellant.

Todd P. Walker (Michael S. McCarthy with him on the brief), Faegre & Benson
LLP, Denver, Colorado, for Defendant - Appellee.

---

Before **O'BRIEN**, **McCONNELL**, and **HOLMES**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

      Virgil Stickley appeals from the district court's grant of summary judgment

to State Farm Mutual Automobile Insurance Company (State Farm). Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. Background

A. <u>The No-Fault Act</u>

In 1973, the Colorado legislature enacted the Colorado Auto Accident Reparations Act ("CAARA" or "No-Fault Act") which governed the sale of automobile insurance in the state.[1] *See* Colo. Rev. Stat. §§ 10-4-701 through 726. The purpose of the No-Fault Act was to avoid inadequate compensation to victims of automobile accidents. *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 553 (Colo. App. 1998). Under CAARA, automobile insurance policies had to include a basic level of personal injury protection (PIP).[2] This basic level included: (a) $25,000 per individual, $50,000 per accident for legal liability coverage and $15,000 for property damage, exclusive of interest and costs; (b) $50,000 for medical services per person for any one accident regardless of fault if performed within five years of the accident; (c) $50,000 for rehabilitative services per person for any one accident regardless of fault if performed within ten years of the accident; (d) reimbursement for up to $400 of gross income per week plus expenses up to $25 a day for fifty-two weeks; and (e) $1,000 in death benefits. *See* Colo. Rev. Stat. § 10-4-706(1)(a)-(e). These basic levels applied to "1) the

---

[1] The No-Fault Act was repealed on July 1, 2003. *See* Colo. Rev. Stat. § 10-4-726 (effective July 1, 2003).

[2] Until 2001, the "basic" level of coverage was called "minimum." *Compare* Colo. Rev. Stat. § 10-4-706(1) (2000 through 2001).

named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle." *Brennan*, 961 P.2d at 553; *see also* Colo. Rev. Stat. § 10-4-707(1). In connection with the basic level of coverages, CAARA allowed an insurer to offer managed care options through health maintenance organizations (HMO) or preferred provider organizations (PPO). *See* Colo. Rev. Stat. § 10-4-706(2) (2001).

From 1992 through its repeal in 2002, § 706(3)[3] of CAARA allowed an insurer to offer an "alternative to the minimum coverages" known as a "reduced" PIP policy.[4] *See* Colo. Rev. Stat. § 10-4-706(3) (1992 through 2002). The reduced coverages included: (I) up to $25,000 per person for any one accident for identified types of medical procedures, if performed within five years of the accident; (II) no compensation for rehabilitation; and (III) $5,000 of death benefits. *See* Colo. Rev. Stat. § 10-4-706(3)(b)(I)-(III) (2001). In order to qualify for the reduced coverages, the combined annual gross income of the person applying and their spouse could not exceed 185% of the federal poverty

---

[3] Subsections 706(3) and (4) were repealed on July 1, 2002, pursuant to terms of the statute. *See* Colo. Rev. Stat. § 10-4-706(3) & (4) (2002).

[4] From 1992 through 2000, this "reduced" PIP coverage was called "basic." *Compare* Colo. Rev. Stat. § 10-4-706(3) (1992 through 2000). In 2001, the "minimum" coverage found in § 706(1) was renamed "basic" and the "basic" coverage found in § 706(3) was renamed "reduced." *Compare* Colo. Rev. Stat. § 10-4-706(1) & (3) (2001 through 2002).

level for a family of four, adjusted upward for family size. *See* Colo. Rev. Stat. § 10-4-706(3)(c)(I). The reduced policy was limited to "the named insured, resident spouse, and resident child." *See* Colo. Rev. Stat. § 10-4-706(3)(f)(I) (2001).

Enacted and repealed at the same time as the reduced PIP coverages, CAARA also contained a provision which required insurance companies to provide written explanations of available § 706 coverage options to their insureds:

> An insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy to an insured. After a named insured selects a policy with desired personal injury protection coverage, an insurer shall not be under any further obligation to notify such policyholder in any renewal or replacement policy of the availability of a reduced personal injury protection policy or of any alternative personal injury protection coverage.

Colo. Rev. Stat. § 10-4-706(4)(a) (2001).

Apart from the basic PIP coverages, CAARA also required insurance companies to offer their insureds optional enhanced PIP benefits in exchange for higher premiums. Section 10-4-710(2)(a) provided:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical expenses] without dollar or time limitation; or
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical expenses] without dollar or time limitations and payments of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have

-4-

performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10-4-710(2)(a) (2003).[5]  Though not specified in § 10-4-710 or elsewhere in CAARA, *Brennan* held these enhanced PIP coverages applied to the same category of people outlined in § 10-4-707(1), including pedestrians. *Brennan*, 961 P.2d at 553.

B.  Case Facts

On December 21, 1992, Mary Stickley purchased automobile insurance from State Farm Agent Leland Woelk for her husband, Virgil Stickley ("Stickley" or "Virgil").  At that time, State Farm offered four PIP coverage options:  P1, P3, P4 and P8.  P1 consisted of the basic level of PIP coverage required by CAARA ($50,000 rehabilitation and $50,000 medical expenses).  The maximum amount of PIP benefits payable under P1 was $130,900.  P3 provided the basic P1 benefits for rehabilitation expenses and loss of income but increased medical expense coverage to $100,000.  The maximum amount of PIP benefits payable under P3 was $189,900.  P4 and P8 were State Farm's enhanced PIP benefit plans.  Both plans provided for payment of medical expenses with no time limit, while P4 also allowed for loss of income benefits without a time limitation.  However, both plans capped benefits at $200,000 per person, per accident and excluded

_____

[5]  Section 710(2)(b) permitted an enhanced policy to have an aggregate limit of $200,000 for any one person as a result of any one accident.

-5-

pedestrians from their coverages.  Mary Stickley selected P3 coverage for Virgil.

In August 1998, State Farm sent Virgil a Renewal Notice for the policy along with an informational bulletin captioned "News and Notes."  The Renewal Notice stated:

> **HIGHER PERSONAL INJURY PROTECTION COVERAGE LIMITS ARE AVAILABLE**
> You can purchase higher Personal Injury Protection coverage limits with no deductible
>
> > **Coverage P4 semi-annual Premium = $110.16**
> > **Coverage P8 semi-annual Premium = $107.27**
> See the enclosed News and Notes article for an explanation of these coverages.

(App. Appx. at 161.)

The "News and Notes" article provided the following with regards to enhanced PIP coverage:

> Policyholders have the option to choose higher levels of PIP coverage — two of which are P8 and P4 coverages — for an additional premium.
>
> P8 coverage — P8 coverage has an aggregate limit of $200,000. This limit is the most we will pay for all no-fault benefits combined (medical and rehabilitation expenses, loss of income, essential services and death compensation).
>
> The medical expenses benefit does not have a time limitation (unlike P1, which is limited to five years), and you can recover up to $200,000 for medical expenses (unless part of your aggregate limit was used for other no-fault benefits).  The other no-fault benefit provisions have limitations, in addition to being subject to the aggregate limit.
>
> P4 coverage — This coverage provides the same benefits as P8,

except it provides broader loss of income benefits. It pays 100 percent of loss of income up to $125 a week, and up to 85 percent of loss of income over $125. This benefit is subject to the aggregate limit of $200,000. In contrast, P8 and P1 coverages limit loss of income benefits to $100 per week, up to a maximum of 52 weeks.

Your enclosed renewal notice quotes the premium for P4 and P8 coverages with no deductible. If you are interested in purchasing either of these coverages, please contact your State Farm agent.

(App. Appx. at 163.) After receiving this renewal notice, Virgil paid the premium for P3 PIP coverage.[6] He never requested or paid for P4 or P8 PIP coverage.

In November 1998, State Farm eliminated the Pedestrian Limitation via Endorsement 6850AJ. That same month, State Farm began disseminating Endorsement 6850AJ to its policyholders, sending it to the policyholder at his/her next renewal date (which occurred every six months). Endorsement 6850AJ became effective for Stickley no later than March 22, 1999. Not only did Endorsement 6850AJ amend Virgil's policy by removing its Pedestrian Limitation for enhanced PIP benefits, it contained a schedule detailing the coverages for P1through P5, P7 and P8 – the seven coverages available at that time. Virgil continued paying the premium for P3 PIP coverage.

On October 6, 1999, Virgil was injured in a car accident while acting in the scope of his employment with Cheyenne Drilling. Following the accident, Virgil

_____

[6] A month earlier, Mary Stickley received a Renewal Notice for her vehicle which also quoted the cost for adding P4 and P8 coverage. Mary Stickely's Renewal Notice contained the same News and Notes explanation of P4 and P8 coverage as the Stickleys received for Virgil's car.

received medical and wage loss benefits from Cheyenne Drilling's workers'

compensation insurance, specifically, $95,193.71 in medical and hospital

expenses and $40,598 in lost income from October 6, 1999, through October 19,

2001. State Farm also began paying P3 PIP benefits to Virgil, paying him

$5,540.90 for items not covered by workers' compensation. On October 19,

2001, Cheyenne Drilling and Virgil settled all remaining lost income claims for

$60,000. On February 12, 2004, Cheyenne Drilling paid Virgil another $60,000

to settle all remaining medical claims.

C. Procedural History

On August 16, 2004, Virgil initiated this lawsuit against State Farm seeking

declaratory relief and reformation of his insurance policy based on State Farm's

violations of CAARA, specifically, its failure to (1) provide him with a written

explanation of all available coverages before issuing his policy pursuant to Colo.

Rev. Stat. § 10-4-706(4)(a) and (2) make a legally compliant offer of enhanced

PIP benefits to him under Colo. Rev. Stat. § 10-4-710(2)(a). He also alleged

claims of breach of contract, willful and wanton statutory bad faith and breach of

the implied covenant of good faith and fair dealing. On April 18, 2005, State

Farm filed a motion for summary judgment and Virgil filed a motion for partial

summary judgment. On November 18, 2005, the district court granted State

Farm's motion and denied Stickley's motion. It concluded State Farm was

entitled to summary judgment on Stickley's claims for declaratory relief and

reformation because it did not violate either Colo. Rev. Stat. §§ 10-4-706(4)(a) or 10-4-710(2)(a). Because Stickley's remaining claims were contingent on his reformation claim, the district court concluded State Farm was entitled to summary judgment on the remaining claims as well. This appeal followed.

## II. Discussion

A. <u>Standard of Review</u>

In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims, "but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1016 (10th Cir. 2001). Accordingly, "[w]e review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Gwinn v. Awmiller,* 354 F.3d 1211, 1215 (10th Cir. 2004). "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). However, we may "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (quotation omitted).

B. Arguments

Stickley asserts the district court erred in granting summary judgment to State Farm. He renews his claim State Farm never made a statutorily compliant offer of enhanced PIP benefits because (1) it did not provide written explanations of enhanced PIP benefits according to § 706(4)(a) and (2) none of the offers or explanations after the date his wife purchased his policy satisfied the offer requirement under § 10-4-710(2)(a).

1. *Written Explanations Under Colo. Rev. Stat. § 10-4-706(4)(a).*

The district court concluded Stickley was not entitled to contract reformation based on a violation of Colo. Rev. Stat. § 10-4-706(4)(a) because the statute only requires insurance companies to provide written explanations of those PIP benefits found in § 706. Stickley contends that while § 710(2)(a) only requires an insurance company to *offer* enhanced benefits, § 706(4)(a) requires an insurance company to provide written explanations of *all available coverages* prior to issuing any policy to an insured, which includes the enhanced PIP coverages in § 710(2)(a). State Farm takes the opposite view and argues § 706(4)(a) only requires written explanations of those PIP benefits *set forth in §* 706.

Pure questions of statutory interpretation are reviewed de novo. *Ward v. Allstate Ins. Co.*, 45 F.3d 353, 354 (10th Cir. 1994). The principal task of statutory interpretation is to determine legislative intent. *Farmers Group, Inc. v.*

*Williams,* 805 P.2d 419, 422 (Colo. 1991). A statute should, where possible, be construed according to its plain meaning and, as a whole, giving meaning to all its parts. *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1173 (Colo. 1991); *People v. Terry*, 791 P.2d 374, 376 (Colo. 1990).

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). "If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id.* at 1119 (quoting *Comm'r of Internal Revenue v. Bosch's Estate*, 387 U.S. 456, 465 (1967)). The decision of an intermediate appellate state court "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

The Colorado Supreme Court has not ruled on this issue, but the Colorado Court of Appeals has:

> We conclude that the plain language of § 10-4-706(4)(a) requires written explanations of the various basic PIP coverages described in § 10-4-706, but does not apply to other types of coverage described elsewhere in the No-Fault Act, including enhanced PIP coverage described in § 10-4-710. Read in context, the phrase "all available coverages" refers back to the immediately preceding phrase "coverages as set forth in this section," and does not require a written

-11-

explanation of any other type of coverage, including enhanced PIP coverage, described in other sections of the No-Fault Act.

*Munger v. Farmers Ins. Exch.*, --P.3d--, 2007 WL 2003001 * 5 (Colo. App. July 12, 2007). The Colorado Court of Appeals noted its interpretation was consistent with the district court's decision in this case. *Id.* (citing *Stickley v. State Farm Mut. Auto. Ins. Co.*, 402 F.Supp.2d 1226, 1232 (D.Colo. 2005)). We agree with the Colorado Court of Appeals; the plain meaning of § 706(4)(a) only requires insurance companies to provide written explanations of those PIP benefits detailed in § 706, e.g., reduced benefits, basic benefits or minimum benefits.[7] Enhanced PIP benefits are not mentioned in § 706. Nevertheless, Stickley continues to argue State Farm was required to give written explanations of enhanced PIP benefits to its insureds. Like the Colorado Court of Appeals, we conclude State Farm had no such obligation.

Stickley argues the Colorado Division of Insurance has interpreted

---

[7] While we do not rely on unpublished decisions as authoritative precedent, we acknowledge a number of Colorado state district courts have reached the same conclusion. *See e.g., Montez v. Am. Family Mut. Ins. Co.*, Case No. 04CV6448, 2005 WL 2893847, *2, n.1 (Colo. Dist. Ct. May 27, 2005) (citing *Dunn v. Am. Family Mut. Ins. Co.,* Denver District Court Case No. 04CV6732 (Apr. 28, 2005); *Cole v. Am. Standard Ins. Co.,* Denver District Court Case. No. 04CV2998 (Feb. 25, 2005); *Almarez v. Guideone Specialty Mut. Ins. Co.,* Boulder District Court Case No. 03CV2013 (Oct. 22, 2004)). Additionally, a number of federal district courts have agreed in unpublished opinions. *See e.g., May v. Travelers Prop. Cas. Co.*, 2006 WL 2784864, *5 (D. Colo. Sept. 26, 2006); *Breaux v. Am. Mut. Ins. Co.*, 387 F.Supp.2d 1154, 1163 (D. Colo. 2005); *Padhiar v. State Farm Auto Ins. Co.*, 2006 WL 517644, *4 (D. Colo. March 2, 2006), *aff'd on other grounds sub nom. Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727 (10th Cir. 2007).

§ 706(4)(a) in accordance with his reading of the statute and asserts deference should be given to its interpretation. *See Lucero v. Climax Molybdenum Co.*, 732 P.2d 642, 645-46 (Colo. 1987) ("When courts are faced with a problem of statutory construction, deference should be given to the interpretation given the statute by the officer or agency charged with its administration."). Stickley relies on several Market Conduct Examination Reports prepared by independent contractors for the Colorado Department of Regulatory Agencies, Division of Insurance.

Having interpreted § 706(4)(a) based on its plain meaning, we are not faced with a problem of statutory construction. In *Munger*, the Colorado Court of Appeals disregarded similar Market Examination Reports:

> We do not read these reports, which involve other insurers and are based on information not in the record before us, as unequivocally establishing the Division of Insurance's agreement with plaintiff's position. In any event, even if the reports could be so interpreted, they would not be dispositive of the issue if they conflict with the plain language of the statute.

2007 WL 2003001 at * 5; *but cf. Soto v. Progressive Mountain Ins. Co.,* --P.3d--, 2007 WL 2128189 (Colo. App. July 26, 2007) (reviewed market conduct examination reports as agency's interpretation because found Colo. Rev. Stat. § 10-4-710(2)(a) ambiguous).

Because State Farm was not required to provide written explanations of enhanced benefits under § 706(4)(a), Stickley is not entitled to contract

reformation on that basis.

2. *Sufficiency of Offer Under Colo. Rev. Stat. § 10-4-710(2)(a).*

Stickley claims he is entitled to reformation of his insurance policy because State Farm failed to offer him enhanced benefits as required by § 710(2)(a). Section 710(2)(a) requires an insurance company to *offer* two kinds of enhanced PIP benefits for inclusion in a complying policy. *See* Colo. Rev. Stat. § 10-4-710(2)(a)(I) & (II); *Soto*, 2007 WL 2128189 at * 5 (requiring insurance companies to offer both types of enhanced benefits available under § 710(2)(a)(I) and (II), not just one or the other). However, CAARA does not define what constitutes an offer in this context. The district court applied a test based on contract law. Subsequently, in *Padhiar v. State Farm Mutual Automobile Insurance Company,* we clarified the proper test to be applied. 479 F.3d 727 (10th Cir. 2007). We said: "In analyzing the nature and scope of an insurer's duty the Colorado Supreme Court determined that the insurer must perform its duty of notification in a manner reasonably calculated to permit the insured to make an informed decision on whether to purchase . . . coverage higher than the [basic] statutory liability limits." *Id.* at 733 (internal citation and quotation omitted). This test comes from *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 913 (Colo. 1992); *see also Munger*, 2007 WL 2003001 at * 2 (concluding the *Parfrey* analysis applies to determining the adequacy of an insurer's offer of enhanced PIP coverage). *Parfrey* also provided several factors to be considered:

-14-

> In determining whether an insurer has fulfilled its statutory duty, a court may appropriately consider such factors as the clarity with which the purpose of . . . coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of . . . coverage would be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

830 P.2d at 913. In the final analysis, the sufficiency of the offer "must be resolved under the totality of the circumstances." *Id.* at 914.

Whether we apply the specific factors set out in *Parfrey* or consider the totality of the circumstances, we affirm the district court's conclusion that State Farm satisfied its obligation under § 710(2)(a) to offer Stickley optional enhanced PIP coverages. *See Padhiar*, 479 F.3d at 734-35. Stickley was quoted the cost of P4 and P8 enhanced benefits in the 1998 Renewal Notice and was referred to the News and Notes article accompanying the Renewal Notice for an explanation of those benefits. The News and Notes article provided him this explanation and told him how he could purchase these enhanced benefits. Stickley chose to continue with P3 coverage. Less than a year later, Stickley received Endorsement 6850AJ which removed any limitation on the recovery of enhanced PIP benefits by pedestrians and enclosed a schedule specifically listing all available PIP coverages.

Stickley claims the 1998 Renewal Notice and News and Notes cannot be considered a valid offer because at that time, State Farm's policies still excluded

pedestrians from its enhanced PIP coverages, which *Brennan* held violated CAARA.[8] Furthermore, Stickley claims *Soto v. Progressive Mountain Insurance Company*, stands for the proposition that unless all coverages in a policy are certified by the Division of Insurance, the insurer does not have the ability to make a valid offer. 2007 WL 2128189 at * 5. These propositions are foreclosed by *Padhiar*:

> *Brennan* pointed out the necessity for insurance policies to provide pedestrian coverage, and, after *Brennan*, State Farm issued Endorsement 6850AJ which removed the pedestrian limitation from Padhiar's policy and included a complete schedule of all available coverages, including P4 and P8 enhanced benefits. Setting aside whether Padhiar would even have standing to bring a claim based on the pedestrian limitation even though he is not a pedestrian, Padhiar in fact received an offer under § 710 containing all available coverages under a policy which did not contain any pedestrian limitation.

479 F.3d at 734. The same is true here. Even were we to assume Stickley, as a non-pedestrian, has standing to challenge the sufficiency of the 1998 Renewal Notice as an offer under § 710(2)(a) based on it containing the pedestrian limitation, we agree with the district court.[9] "[State Farm] complied with section

---

[8] Stickley also claims State Farm is limited to its statement the offer of enhanced PIP coverage came from the 1998 Renewal Notice and News and Notes. As pointed out in *Padhiar*, "several other courts have found that these identical mailings by State Farm provided sufficient notice under § 710." 479 F.3d at 734.

[9] Stickley claims *Hill v. Allstate Insurance Company,* holds that an insured has standing to bring an enhanced PIP claim even though he is not within the category of persons excluded by a policy defect if the complaint is explicitly framed as a contract/tort action. 479 F.3d 735 (10th Cir. 2007). This is true to the extent the focus of the case is on whether State Farm failed to offer him a

-16-

10-4-710, at the latest, by March 1999, when it sent . . . Endorsement [6850AJ]." *Stickley*, 402 F.Supp.2d at 1235.

To the extent Stickley is arguing the former pedestrian limitation automatically entitles him to the fullest amount of benefits possible for all categories of insureds, even those categories unrelated to the defect, he is incorrect. The plaintiff in *Brennan* was an injured pedestrian. 961 P.2d at 552. The driver had purchased enhanced PIP benefits, but the policy excluded pedestrians from receiving those benefits. *Id*. The Colorado Court of Appeals interpreted CAARA to require insurance companies to offer enhanced PIP benefits that covered pedestrians in addition to the other categories of people listed in § 707(1). *Id*. In the end, it agreed with the trial court that the policy should be reformed to provide enhanced benefits to pedestrians. *Id*. at 554. It did not, however, order reformation of the entire policy to provide enhanced PIP benefits for all categories of people.

Thus, when an insurance policy is found to violate CAARA, only the defective portion of the policy is reformed to comply with CAARA. It does not wipe the slate clean and give the insured the fullest amount of benefits available for every category possible. Disregarding the fact State Farm removed the

---

compliant policy *and* subsequently failed to provide compliant benefits. *Id*. at 741. Stickley was not a pedestrian, therefore, State Farm could not fail to provide him the excluded pedestrian coverage. Even so, State Farm cured any defect by issuing Endorsement 6850AJ. *See Padhiar*, 479 F.3d at 734-35.

-17-

pedestrian limitation from Stickley's policy when it issued Endorsement 6850AJ, reformation of his insurance contract to include the highest possible PIP benefits for pedestrians would not benefit him. Stickley was not a pedestrian and therefore would not receive additional benefits as a result of reformation based on that pedestrian limitation. The only defect Stickley can claim is he was never offered enhanced PIP benefits at all. As we have determined, State Farm satisfied its obligation to "offer" Stickley enhanced PIP benefits under § 710(2)(a).

**AFFIRMED**.