**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 11, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GUS VAKAS; GEORGE VAKAS,

      Plaintiffs-Appellants,

v.

HARTFORD CASUALTY
INSURANCE COMPANY,

      Defendant-Appellee.

No. 09-3141
(D.C. No. 6:08-CV-01127-EFM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY, PORFILIO,** and **O'BRIEN**, Circuit Judges.

The question before us is whether Hartford Casualty Insurance Company

must pay the replacement cost value for business property destroyed in a fire,

even though the appellants did not actually replace the property.  We have

jurisdiction under 28 U.S.C. § 1291 to review the district court's grant of

summary judgment in favor of Hartford.  Because the insurance policy at issue

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

explicitly provides that Hartford will not pay replacement costs for any property that is not actually replaced, we affirm.

## *Background*

On August 29, 2007, fire destroyed a medical office building and its contents in Coffeyville, Kansas. The building and contents were covered by a Hartford insurance policy issued to John Vakas, M.D., who passed away on March 13, 2005. The appellants are Dr. Vakas' heirs, and it is undisputed that they possess an interest in the policy.

The policy provides for a maximum of $240,800 in replacement costs for business personal property. The appellants replaced only four items of property. Hartford asserted they were entitled only to the actual cash value of the remainder of the destroyed property. Accordingly, Hartford tendered appellants a check for $129,851.83. The appellants disagreed with Hartford's reading of the policy and rejected the check. They brought suit in the district court, arguing that they were entitled either to the policy limits of $240,800 because all of the building's contents were destroyed, or, in the alternative, to the replacement-cost value of $190,231.13 because the policy provided for replacement-cost value. The district court granted Hartford's motion for summary judgment, holding the contract was not ambiguous and it was Hartford's prerogative to determine whether to pay replacement-cost value.

*Analysis*

"In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims, but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007) (quotation omitted). "Accordingly, we review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Id.* (quotation omitted).

Under Kansas law:

> If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used. An insurance policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. An ambiguity does not exist merely because the parties disagree on the interpretation of the language.

> To determine whether an insurance contract is ambiguous, the court must not consider what the insurer intends the language to mean. Instead, the court must view the language as to what a reasonably prudent insured would understand the language to mean. This does not mean that the policy should be construed according to the insured's uninformed expectations of the policy's coverage.

> Courts should not strain to find an ambiguity when common sense shows there is none. The court must consider the terms of an insurance policy as a whole, without fragmenting the various provisions and endorsements.

> As a general rule, exceptions, limitations, and exclusions to insurance policies are narrowly construed. The insurer assumes the duty to define limitations to an insured's coverage in clear and

explicit terms.  To restrict or limit coverage, an insurer must use clear and unambiguous language.  Otherwise, the insurance policy will be construed in favor of the insured.

*Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003) (citations omitted).

The appellants assert they are entitled to either the policy limits or the stipulated replacement-cost value.  But there does not appear to be any basis for the appellants to collect additional monies just because the property was entirely destroyed and the policy limits happen to exceed the replacement-cost value.  Accordingly, we focus on whether the policy entitles the appellants to receive replacement-cost value for the unreplaced items.

The applicable policy provisions are as follows:

**E.    PROPERTY LOSS CONDITIONS**

. . .

**5.    Loss Payment**

In the event of physical loss or physical damage covered by this policy:

a.  At our option we will either:

**(1)**  Pay the value of physically lost or physically damaged property, as described in paragraph **d.** below.

**(2)**  Pay the cost of repairing and replacing the physically lost or physically damaged property, plus any reduction in value of repaired items;

**(3)** Take all or any part of the property at an agreed or appraised value;

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

b. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. We will determine the value of Covered Property as follows:

**(1)** At replacement cost (without deduction for depreciation), except as provided in **(2)** through **(7)** below.

**(a)** You may make a claim for physical loss or physical damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have physical loss or physical damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the physical loss or physical damage.

**(b)** We will not pay on a replacement cost basis for any physical loss or physical damage:

**(i)** Until the physically lost or physically damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the physical loss or physical damage.

. . .

**(c)** We will not pay more for physical loss or physical damage on a replacement cost basis than the least of:

   **(i)** The cost to replace, on the same premises, the physically lost or physically damaged property with other property of comparable material and quality and which is used for the same purpose; or

   **(ii)** The amount you actually spend that is necessary to repair or replace the physically lost or physically damaged property.

Aplt. App. at A-87 to A-89.

It is not clear from the record which § E.5.a. payment option Hartford selected. The district court assumed that the tender was made under § E.5.a.(3), the option to "[t]ake all or any part of the property at an agreed or appraised value." We disagree. The parties have stipulated to certain amounts for actual cash value and replacement-cost value, but they have not agreed on the value of the property. If they had, they would not now be before this court, each advocating the adoption of a different value standard. Moreover, the record does not reflect any appraisal other than Hartford's own valuation of the actual cash value of the destroyed property (the appellants did not demand an appraisal). Thus, we cannot conclude that Hartford acted pursuant to § E.5.a.(3).

-6-

But "we may affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied on by the district court." *Stickley*, 505 F.3d at 1076 (quotation omitted). And in contrast to § E.5.a.(3), § E.5.a.(1) does not require the parties to agree on a value, but instead allows Hartford to "[p]ay the value of physically lost or physically damaged property," under the value-determination provisions set forth in § E.5.d. Section E.5.a.(1) more accurately reflects Hartford's conduct in this case.

As the appellants assert, under § E.5.d.(1), the presumptive method of valuing the destroyed property is replacement cost. But as the district court recognized, paragraph d.(1) also carries limitations in subparagraphs (1)(b) and (1)(c), which clearly provide that Hartford is not liable to pay replacement-cost value unless and until property actually is replaced. Reading § d.(1) without taking account of subparagraphs (1)(b) and (1)(c) would impermissibly fragment the policy.

The policy is not ambiguous or internally inconsistent. In light of the clear language of §§ E.5.d.(1)(b) and (c), a reasonably prudent insured would understand that Hartford would not pay replacement-cost value unless and until the property actually was replaced. *Cf. Burchett v. Kan. Mut. Ins. Co.*, 48 P.3d 1290, 1291-92 (Kan. App. 2002) ("The unambiguous terms of the contract require the insured to actually repair or replace the damaged property before he or she may collect the full replacement cost. If the insured does not repair or replace the

damaged property, he or she is only entitled to actual cash value."). It is undisputed that the appellants did not replace the bulk of the property for which they seek reimbursement. Having failed to satisfy the policy's explicit requirements for payment of replacement costs, and therefore having made themselves ineligible to receive payment on that basis for all but four items, the appellants implicitly elected the "actual cash value" payment option in § E.5.d.(1)(a) for the bulk of the property. Hartford is not liable to pay replacement-cost value for the property the appellants never replaced.

### *Conclusion*

The judgment of the district court is AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge