**F I L E D**

**PUBLISH**

**December 30, 2005**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

RICKY EUGENE CLARK, on behalf
of himself and all others similarly
situated,

     Plaintiff-Appellee/Cross-
     Appellant,

     v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois corporation,

     Defendant-Appellant/Cross-
     Appellee.

Nos. 04-1022 and 04-1023

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 00-B-1841)**

---

Michael S. McCarthy, (Mark W. Fischer and Marie E. Williams, with him on the
briefs), Faegre & Benson, LLP, Denver, Colorado, for Defendant-
Appellant/Cross-Appellee.

Robert B. Carey, (L. Dan Rector and Leif Garrison, The Carey Law Firm,
Colorado Springs, Colorado; Steve W. Berman, Hagens Berman, LLP, Seattle,
Washington; Walter H. Sargent, Colorado Springs, Colorado, with him on the
briefs) The Carey Law Firm, Colorado Springs, Colorado, for Plaintiff-
Appellee/Cross-Appellant.

---

Before **HENRY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

On July 18, 1996, an automobile insured by State Farm Mutual Automobile Insurance Company ("State Farm") struck Ricky Eugene Clark, a pedestrian. Mr. Clark filed a class-action suit against State Farm to collect extended personal injury protection ("PIP") benefits under the Colorado Auto Accident Reparations Act ("CAARA"). *See* COLO. REV. STAT. §§ 10-4-701 to 10-4-726 (2002).[1] He alleged that the driver's Pedestrian Limitation policy from State Farm did not conform to CAARA and that *Brennan v. Farmers Alliance Mutual Insurance Co.,* 961 P.2d 550 (Colo. Ct. App. 1998) entitled him to unlimited benefits and lost income. The district court dismissed all claims.

On appeal, we reversed the district court's decision and concluded that *Brennan* required reformation of State Farm's policy to provide extended PIP benefits for injured pedestrians like Mr. Clark. *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234 (10th Cir. 2003) ("*Clark I*"). We remanded the case to determine an effective date of reformation and the amount of extended PIP

---

[1]Unless otherwise noted, all references to statutes in this opinion are to Colo. Rev. Stat. §§ 10-4-701 to 10-4-726 (2002). Though CAARA was repealed effective July 1, 2003, the parties agree that we apply its provisions to Mr. Clark's 1996 accident.

-2-

benefits to which Mr. Clark was entitled. *Id.* at 1242-43. The district court concluded that the date of its order–December 19, 2003–was the appropriate reformation date and that Mr. Clark was entitled to a statutory aggregate cap of $200,000 in benefits. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 292 F. Supp. 2d 1252, 1270 (D. Colo. 2003) ("*Clark II*"). In July 2004, the district court denied Mr. Clark's motion for attorney fees.[2]

State Farm and Mr. Clark now appeal the district court's *Clark II* order. State Farm challenges the level of PIP benefits to which Mr. Clark should be entitled after reformation of its policy. Mr. Clark appeals (1) the effective date of reformation, (2) the district court's application of an aggregate cap to the policy, and (3) the district court's limitation of the policy reformation to pedestrians instead of all eligible insured persons. We exercise jurisdiction under 28 U.S.C. § 1291 because the district court certified its judgment as final. *See* FED. R. CIV. P. 54(b). For the reasons stated below, we affirm the district court.

## I. BACKGROUND

---

[2]In a separate appeal, No. 04-1315, Mr. Clark challenges the district court's denial of his motion for attorney fees. His appeal as to attorney fees was orally argued in conjunction with the appeal at issue. After careful consideration of the relevant statute and case law, we have certified an unanswered question of state law to the Colorado Supreme Court that may be determinative to Mr. Clark's claim for attorney fees. *See Clark v. State Farm Mut. Auto. Ins. Co.*, No. 04-1315.

The district court presented a thorough factual and procedural background, and we only briefly summarize the relevant facts here. *See Clark II*, 292 F. Supp. 2d at 1255-1258. On July 18, 1996, Mr. Clark was a pedestrian at an intersection in Pueblo, Colorado, when a vehicle driven by Monica Madrid struck him. The driver's grandmother, Hortencia Madrid, owned the vehicle and insured it with State Farm's basic "P1" level of PIP coverage. According to the "Madrid policy" schedule, P1 coverage provides (1) payments for medical expenses up to $50,000; (2) payments for rehabilitation expenses up to $50,000; (3) payments for loss of income up to a weekly rate of $400, for 52 weeks; (4) payments for essential services up to a daily rate of $25, for 364 days; and (5) death compensation up to $1,000. *See* § 706(1)(b)(I), (1)(c)(I), (1)(d)(I); Aplt's App. vol. II, doc. 20, at 18. "Essential services" include "reasonable expenses incurred . . . during the insured's lifetime for ordinary and needed services the insured would have performed without pay but for bodily injury." Aplt's App. vol. II, doc. 20, at 15 (emphasis omitted).

Under the Madrid policy, Mr. Clark received PIP payments for $48,617 in medical expenses, $3,377 in essential services, and $15,730 for 52 weeks of wage-loss benefits. After timely paying wage-loss benefits for one year, State Farm discontinued those payments pursuant to P1 coverage limits. Only Mr. Clark's wage-loss benefits are at issue on appeal. He remains unable to work in

any capacity and now seeks wage-loss benefits for an indefinite period of time.

The Madrid policy contains a distended Pedestrian Limitation that limits

PIP benefits to the lowest level, P1, for pedestrians:

> The most we pay for each **insured** who sustains **bodily injury** and the period of time from the date of the accident in which the services must be furnished or the loss of income incurred shall not exceed:
>
> 1. the amount and period of time shown in the Schedule applicable to each benefit under coverage symbol P1 if the *insured* is a *pedestrian.* This does not apply to *you, your spouse,* or any *relative.*
>
> 2. the amount and period of time shown in the Schedule applicable to each benefit under *your* coverage symbol for any other *insured.*

*Id.* at 17 (emphasis in original).

Hortencia Madrid's son, Roger, first purchased automobile liability

insurance from State Farm in 1985 and chose extended PIP benefits coverage at

the P3 level. *See id.* at 18 (detailing the higher allowance for medical expenses

and a higher death compensation under P3 coverage). The next year, he reduced

coverage from P3 to P1, basic coverage at the lowest level. Mr. Madrid

purchased a second policy in 1991, also at the P1 level. In 1994, the Madrids

changed the named insured on their insurance policy to Hortencia Madrid, with

Monica Madrid as the primary driver. At that time, State Farm did not offer

Hortencia Madrid the option to purchase extended PIP benefits that included

extended pedestrian coverage.

## A. Colorado Auto Accident Reparation Act

In 1973, the Colorado legislature passed the Colorado Auto Accident Reparations Act. In *Clark I*, we discussed the relevant statutory framework of CAARA:

> The stated statutory purpose of CAARA is to "avoid inadequate compensation to victims of automobile accidents." § 702. Colorado courts construe CAARA liberally to further its remedial and beneficial purposes. CAARA requires that a policy include a minimum level of PIP benefits. Specifically, [sub]section 706(1) requires a carrier to provide, without regard to fault, payments for medical expenses, rehabilitation expenses, and lost wages. Section 706 sets dollar and time limits for each category of expense. Section 707 defines the categories of people who receive coverage under section 706 to include "1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle." *Brennan*, 961 P.2d at 553. CAARA also requires every insurer to offer the named insured extended PIP benefits in exchange for higher premiums. These extended PIP benefits do not place time or dollar limitations on medical expense claims and offer the possibility of greater wage loss reimbursements.[3] The version of section 710

---

[3]Subsection 710(2)(a) provides in pertinent part:

Every insurer shall offer for inclusion in a complying policy, in addition to the coverages described in section 10-4-706, at the option of the named insured:

(I)    Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation; or

(II)   Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income

(continued...)

effective at the time of [Mr.] Clark's accident, which applie[s] to policies issued on or after July 1, 1992, does not list or refer to persons eligible for extended coverage. Moreover, section 707, which sets out the four categories of PIP benefits recipients, refers only to the minimum PIP benefits available under section 706 and does not reference the enhanced benefits set out in section 710.

319 F.3d at 1237-39 (footnote and internal citations omitted).

**B.**    *Brennan v. Farmers Alliance Mutual Insurance Co.*

Subsequent to CAARA's passage, the Colorado Court of Appeals decided

*Brennan*. In *Clark I*, we summarized the relevant holding of *Brennan*:

Approximately nineteen months after [Mr.] Clark's accident, the Colorado Court of Appeals decided *Brennan*, 961 P.2d at 550. In *Brennan,* a pedestrian injured in a car accident sued Farmers Alliance, seeking enhanced PIP benefits under section 710. Farmers Alliance did not offer extended PIP benefits to cover pedestrians. The trial court reformed the policy to incorporate the extended benefits.

[In agreeing with the trial court,] the Colorado Court of Appeals explained that although section 710(2)(a) does not specify the persons entitled to extended benefits, CAARA's statutory scheme indicated that section 710 "describes an option to purchase coverage, but at higher limits, for the same persons and under the same conditions applicable

---

[3](...continued)
per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

§ 710(2)(a). The insurer, however, may cap the total limit on all PIP benefits set forth in section 706(1)(b) to (1)(e) at $200,000 for any person per accident. *See id.* § 710(2)(b).

to mandatory basic PIP coverage [outlined in section 706]." *Id.* [at 552.] The court also relied on the fact that section 710 covers "injured person[s]" and not merely "insured[s]," which suggests that section 710 covered pedestrians. *See id.* at 554. Because Farmers Alliance did not offer extended PIP benefits to cover pedestrians in conformity with CAARA, the court read the additional coverage into the policy and affirmed the reformation of the policy. The court also affirmed the trial court's judgment in favor of the plaintiffs for the difference between the minimum PIP benefit levels and the maximum PIP aggregate amount provided under the policy.

The Colorado Court of Appeals proceeded, however, to affirm the dismissal of the plaintiffs' breach of contract, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, and willful and wanton breach of contract claims. In addressing the breach of contract claim, the *Brennan* court concluded that "until the contract was reformed, there was no policy in existence which granted plaintiffs rights for additional PIP benefits." *Id.* at 556.

*Clark I*, 319 F.3d at 1238-40 (internal citations omitted).

## C.   *Clark I*

In August 2000, Mr. Clark brought a class-action suit in federal district court on behalf of all injured persons, covered under a State Farm policy, who were not paid extended benefits under CAARA. He maintained that reformation of the Madrid policy should include extended PIP benefits under section 710. Mr. Clark brought additional claims for (1) breach of contract for failure to pay extended PIP benefits, (2) breach of the duty of good faith and fair dealing, (3) willful and wanton breach of contract, and (4) deceptive trade practices. The district court reasoned that *Brennan* could not be applied retroactively and

granted State Farm's motion to dismiss all claims.

On appeal, this court reversed, concluding that the district court erred in its prospective-only interpretation of *Brennan*. *Id.* at 1241. We applied the state's retroactivity standards to conclude that the Colorado Court of Appeals did not announce a new principle of law "[b]ecause *Brennan* involved the interpretation of a statute enacted prior to the time the Madrid policy was issued." *Id.* at 1242. On remand, we ordered the district court to "determine, through the exercise of its equitable powers, the effective date of reformation" and "the amount of extended PIP benefits, if any, to which Clark is entitled." *Id.* at 1241-43. Finally, we affirmed the dismissal of Mr. Clark's claim of deceptive trade practice and recognized that the remaining contract, tort, and statutory claims would remain viable only if the district court's effective date of reformation preceded its order of reformation.

**D.     *Clark II***

On remand, the district court held that (1) the effective date of reformation of the Madrid policy was the date on which the order was entered, December 19, 2003; (2) Mr. Clark was entitled to the P4 level of extended PIP benefits; (3) the Madrid policy is subject to a $200,000 aggregate limit in benefits coverage; and (4) Mr. Clark's remaining claims of breach of contract, breach of the duty of good faith and fair dealing, and willful and wanton breach of contract were not viable

in light of the effective date of reformation. *Clark II*, 292 F. Supp. 2d at 1269. On February 9, 2005, we denied State Farm's motion to certify a question of law, regarding reformation of the Madrid policy, to the Colorado Supreme Court.

On appeal, State Farm and Mr. Clark present four issues. State Farm argues that the district court erred when it reformed the Madrid policy to provide Mr. Clark with P4 benefits. Mr. Clark contends that the district court erred when it (1) applied a $200,000 aggregate cap to the Madrid policy; (2) selected the date of the district court's order as the policy's effective reformation date; and (3) reformed the Madrid policy to include only pedestrians and not all eligible insured persons under P4 coverage. We affirm the district court's order.

## II. DISCUSSION

We first address the standard of review for challenges to the terms of the Madrid policy's reformation and then proceed to the merits of each claim.

### A.    Standard of review

We review the district court's exercise of its equitable powers for abuse of discretion. *Davoll v. Webb*, 194 F.3d 1116, 1139-40 (10th Cir. 1993). Equitable remedies include contract reformation. *Clark I*, 319 F.3d at 1242. "A district court abuses its discretion where it commits a legal error or relies on clearly

erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (internal citation omitted). "We examine the district court's underlying factual findings for clear error, and its legal determinations de novo." *Id.* (italics omitted).

This court applies the substantive law of the forum state when, as here, we exercise diversity jurisdiction. *See Blanke v. Alexander,* 152 F.3d 1224, 1228 (10th Cir. 1998). The parties agree that Colorado law governs our interpretation of the insurance policies, and we apply the most recent statement of state law by the Colorado Supreme Court. *See Wood v. Eli Lilly & Co.,* 38 F.3d 510, 513 (10th Cir. 1994). Furthermore, "decisions of a state's intermediate appellate courts are some evidence of how the state supreme court would decide the issue, and we can consider them as such, even if they are not the binding precedent under state law." *Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1492 n.10 (10th Cir. 1995).

**B.     Reformation to provide extended PIP benefits at the P4 level**

The district court concluded that in light of our decision in *Clark I*, Mr. Clark "was entitled to extended PIP benefits beginning on the day of reformation." 292 F. Supp. 2d at 1268. It determined that "the appropriate remedy is to include coverage that should have been offered" and later specified that reformation should include extended PIP benefits under P4 coverage. *Id.* at

1268-69. This level of coverage provides wage-loss payments up to an aggregate limit of $200,000. *Id.* at 1269.

State Farm now contends that the district court erred in its reading of *Clark I*. The insurer argues that the proper reformation remedy is simply to strike the Pedestrian Limitation from the Madrid policy and permit Mr. Clark to receive the same level of coverage, P1, that the Madrids purchased for themselves.

"Generally, the purpose of reformation of an insurance contract is to make the policy express the true intent of the parties. However, when a policy is violative of a statute, reformation is also required to assure that coverage will meet the statutory minimums." *Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. Ct. App. 1996). The Colorado Court of Appeals held in *Brennan* that "when . . . an insurer fails to offer the insured optional coverage that satisfied [CAARA], additional coverage in conformity with the offer mandated by statute will be incorporated into the policy." 961 P.2d at 554. We stated in *Clark I* that "under *Brennan*, [Mr.] Clark is entitled as a matter of law to reformation of the Madrid policy to include extended PIP benefits." 319 F.3d at 1241.

The district court's decision comports with our decision in *Clark I* and the Colorado law regarding reformation of insurance policies. The district court noted that it is "undisputed that State Farm did not offer Mrs. Madrid the option of purchasing extended PIP benefits which included extended coverage for

-12-

pedestrians." *Clark II*, 292 F. Supp. 2d at 1268. As in *Brennan*, the insurer here offered extended coverage that *excluded* pedestrians. *See Clark I*, 319 F.3d at 1237 ("Before Hortencia Madrid purchased the policy, State Farm offered her extended PIP benefits for herself, her resident relatives, and passengers in her insured vehicle with her consent, *but not for pedestrians*.") (emphasis added). *Brennan* clearly held that the type of policy offered to Mrs. Madrid does not satisfy subsection 710(2)(a) of CAARA. *See* 961 P.2d at 554.

Further, as the district court noted, *Brennan* and *Thompson* reformed those insurance policies to include extended pedestrian coverage that insurers should have offered under section 710. "When an insurance policy is reformed to conform to a statutory minimum, such term is deemed to be incorporated by reference into the policy." *Brennan*, 961 P.2d at 556; *see also Thompson*, 940 P.2d at 990-91 (incorporating unlimited PIP benefits because the insurer failed to offer supplemental pedestrian coverage to the driver). Thus, the district court did not abuse its discretion when it reformed the Madrid policy to provide Mr. Clark with extended PIP benefits under the P4 level of coverage.

## C.    Application of a $200,000 aggregate cap

The district court referenced State Farm's policy coverage chart and found that, like the policy in *Brennan*, the Madrid policy includes a $200,000 limit. *Clark II*, 292 F. Supp. 2d at 1268-69. The district court further determined that

-13-

applying the $200,000 aggregate cap "is consistent with the admonition that a reformed insurance policy express the parties' true intent." *Id.* at 1269. Mr. Clark now argues that the district court erred in applying the $200,000 limit.

Subsection 710(2)(b) of CAARA states that "[a] complying policy may" include a $200,000 aggregate limit for all benefits set forth in subsections 706(1)(b) to (1)(e) "on account of injury to or death of any one person" from a vehicle accident. The policy in *Brennan* included an endorsement specifically providing an aggregate limit for medical expenses, rehabilitation expenses, work loss, essential services, and death compensation. 961 P.2d at 555. The Colorado Court of Appeals in *Brennan* relied on the policy's "plain terms" and imposed a $200,000 limit on total PIP benefits payable. *Id. Thompon* makes clear, however, that when an insurer does not include an aggregate cap in the policy agreement, the insurer cannot take advantage of the possible cap. 940 P.2d at 991.

The parties agree that the Madrid policy's declarations page indicates selection of P1 coverage. Aplt's App. vol. II, doc. 20, at 6. Mr. Clark disputes application of the $200,000 aggregate cap to P1 coverage and contends that such a cap applies only to coverage options that the Madrids did not select. He further maintains that State Farm expressly chose not to include an aggregate cap for P1 coverage even though it easily could have. According to State Farm, it would be meaningless to note such an explicit limit to P1 coverage because P1 benefits can

*never* exceed $200,000. State Farm maintains that the Madrid policy evidences an intent to include the aggregate limit to its fullest possible extent by capping all levels of PIP coverage that could exceed $200,000.

The Madrid policy's schedule does not list an aggregate limit for coverage at the P1 level. Other coverage symbols provide higher wage-loss benefits and explicitly specify a $200,000 aggregate limit. *See id.* at 18. We agree with State Farm that P1 coverage, however, could never reach a $200,000 aggregate cap given its respective payment limits for (1) medical expenses ($50,000), (2) rehabilitation expenses ($50,000), (3) wage-loss benefits (52 weeks of payments, up to a weekly rate of $400, for a maximum of $20,800), (4) essential services (364 days, up to a daily rate of $25, for a maximum of $9,100), and (5) death compensation ($1,000). P1 coverage can only pay up to $130,900 in benefits.

Furthermore, the Madrid *policy* clearly caps all coverage levels that could exceed $200,000. *See* Aplt's App. vol II, doc. 20, at 18 (providing a cap of $200,000 for PIP benefits payable at the P4, P8, P9, and P10 levels). On its policy schedule, State Farm need not specifically include a $200,000 aggregate limit under the P1 coverage symbol when such basic coverage cannot possibly provide PIP benefits exceeding that amount. *See Breaux v. Am. Family Mut. Ins. Co.*, 387 F. Supp. 2d 1154, 1165 (D. Colo. 2005) (applying a $200,000 aggregate limit to a policy with similar coverage for medical expenses, rehabilitation

-15-

expenses, lost wages, essential services, and death compensation because "[s]imple addition will show that the maximum benefit available under the mandatory minimum PIP coverage is $130,900, patently within the $200,000 aggregate limit"). Thus, we agree with the district court that the Madrid policy's $200,000 aggregate limit applies to benefits under the reformed policy.

**D.    Selection of the reformation date**

Mr. Clark contends that the district court abused its discretion when selecting the date of its order as the reformation date of the Madrid policy. "[T]he determination of the effective date of reformation affects the viability of a plaintiff's contract, tort, and statutory claims, but not the reformation of the policy, which was mandated by *Brennan*." *Clark I*, 319 F.3d at 1242.

Our circuit recognized in *Clark I* that the reformation date "is an equitable decision to be determined by the trial court based on the particular circumstances of each case." *Id.* at 1243. We noted possible effective dates of reformation as (1) the date the Madrid policy was issued; (2) the date the *Brennan* trial court reformed the policy; (3) the date of the *Brennan* decision by the Colorado Court of Appeals; and (4) the date the district court on remand reformed the Madrid policy. *Id.* In selecting an effective date of reformation, we instructed the district court to

> consider all appropriate factors, including the following: (1) the degree

-16-

to which reformation from a particular effective date would upset past practices on which the parties may have relied and whether State Farm anticipated the rule in *Brennan*; (2) how reformation from a particular effective date would further or retard the purpose of the rule in *Brennan*; and (3) the degree of injustice or hardship reformation from a particular effective date would cause the parties.

*Id.*

1.    *Clark II*

The district court "conclude[d] that the reformation of the Madrid policy should apply prospectively only" and chose the date of its order–December 19, 2003–as the effective reformation date. *Clark II*, 292 F. Supp. 2d at 1268. The district court provided a detailed equity analysis, which we briefly summarize here, of three "appropriate factors" from *Clark I*. *See* 319 F.3d at 1243. The three factors specifically noted in *Clark I* were adopted from Colorado's test to determine a decision's retroactivity. *Id.* at 1243 n.6. As to the first factor, the district court noted that State Farm changed its practices after *Brennan* by (1) eliminating its Pedestrian Limitation, (2) treating new and ongoing pedestrian claims as if the Pedestrian Limitation was not in the insured's policy, and (3) failing to research inactive claims. After examining each post-*Brennan* response, the district court concluded that, on balance, the first factor favored a reformation date after *Clark I*. *Clark II*, 292 F. Supp. 2d at 1261-65.

For the second *Clark I* factor, the district court recognized that *Brennan's* purpose arguably favors reformation beginning when Mrs. Madrid first signed her policy, but it also acknowledged that *Brennan's* rule "must be counterbalanced by the insurer's ability to pay claims on an actuarially sound basis." *Id.* at 1266. This second factor, according to the district court, partially favors a pre-*Brennan* reformation date and partially favors a date after *Clark I*. *Id.* at 1266-67. As to the third factor, the district court determined that a pre-*Clark I* reformation date would create an inequitable result for State Farm, as the insurer would be liable "for coverage it could not foresee during a time it reasonably did not know of such exposure." *Id.* at 1267. On balance, the district court concluded that the most equitable reformation date was the date of its order.

2. Discussion

Mr. Clark maintains that the reformation date cannot be later than the date on which State Farm learned of *Brennan*. As to the first factor, Mr. Clark asserts that State Farm rather than pedestrian claimants should bear the consequences of the insurer's errant interpretation about *Brennan's* retroactivity. Regarding the second *Clark I* factor, he argues that the district court erred when it concluded that an early reformation date must be counterbalanced by State Farm's ability to determine insurance premiums on an actuarially sound basis. Mr. Clark maintains that the district court disregarded *Clark I's* ruling that *Brennan* applied

-18-

retroactively by considering the unfairness of imposing liability on State Farm for thousands of pedestrian injuries for which it could not predict coverage risk and collect premiums. As to the third factor, Mr. Clark complains that the district court did not fully examine his possible hardships.

After examining the record and the district court's thorough equity analysis, we cannot conclude that the district court's effective date of reformation was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir. 2001) (internal quotation marks omitted) (defining when a district court abuses its discretion). We will not disturb the district court's selection of an effective reformation date unless our court has "a definite and firm conviction that the [district] court has made a clear error in judgment or exceeded the bounds of permissible choice in the circumstances." *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002) (quotation marks omitted). Here, the district court selected a "permissible choice." We specifically listed "the date the district court on remand reforms the contract" as a "[p]ossible effective date of reformation" in *Clark I*. 319 F.3d at 1243. The selected reformation date also accords with our acknowledgment that "[t]he fact that the insured may be entitled to obtain a reformation of the policy does not impose any obligation upon the insurer to conform to such 'reformed' policy before a court has made such reformation." *Id.* at 1244 (quoting 2 LEE R.

RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 26:3 (3d ed. 1997)).

Moreover, we find especially relevant the third factor noted in *Clark I*: "the degree of injustice or hardship reformation from a particular date would cause the parties." *Id.* at 1243. The district court appropriately recognized the magnitude of State Farm's exposure to liability if every plaintiff like Mr. Clark could proceed with breach of contract and tort claims under an earlier reformation date. Admittedly, the district court did not explicitly discuss the countervailing hardships of Mr. Clark from particular reformation dates. However, "based on the particular circumstances," the district court did not abuse its discretion when it selected the date of its order as the Madrid policy's effective date of reformation. *Id.*

## E.    Reformation only as to pedestrians

Finally, Mr. Clark maintains that the district court erred because it reformed the Madrid policy only to include extended PIP benefits for pedestrians. He contends that reformation instead should have applied to all categories of eligible insured persons under subsection 707(1), including the named insureds, resident relatives, passengers occupying the vehicle with the insured's consent, and pedestrians injured by the covered vehicle. Mr. Clark offers this argument as he intends to bring a class action on behalf of additional groups of claimants.

In *Clark I*, our remand concerned the benefits sought by Mr. Clark as a

pedestrian. We instructed the district court to "determine the amount of extended PIP benefits, if any, to which *Clark* is entitled." 319 F.3d at 1241 (emphasis added). We explained that "[t]he holdings in *Brennan* and *Thompson* mandate that the Madrid policy be reformed to include extended PIP benefits and that pedestrians, like Clark, must be included in the class of beneficiaries eligible to receive those benefits." *Id.* at 1242 (citing *Brennan*, 961 P.2d at 554; *Thompson*, 940 P.2d at 990). On remand, the district court followed our instructions, appropriately noting that "only Mr. Clark's case and the Madrid policy are presently before [it]." *Clark II*, 292 F. Supp. 2d at 1266.

Significantly, the Colorado Court of Appeals reasoned in *Brennan* that an insurer must offer extended PIP coverage not only to pedestrians but to all categories of persons listed in subsection 707(1). 961 P.2d at 553. In addition, we stated in an unpublished opinion that "*Thompson's* holding regarding reformation of [a statutorily deficient] insurance contract is, in our view, applicable to any situation where an insurer has failed to comply with the [CAARA] and offer an insured the extended coverage set forth therein." *Fincher v. Prudential Prop. & Cas. Ins. Co.*, 76 F. App'x 917, 922 (10th Cir. 2003). However, neither our decision in *Clark I* nor the district court's order in *Clark II* determined the benefits to which non-pedestrians are entitled. Reformation of the Madrid policy only "for pedestrians" neither restricts reformation of other State

-21-

Farm policies to provide extended PIP benefits for eligible injured persons under subsection 707(1) nor limits the class of eligible injured persons for which Mr. Clark may be named class representative upon subsequent class certification proceedings. We need not address Mr. Clark's standing to raise claims for other injured persons to resolve the controversy before us.

Therefore, the district court did not abuse its discretion when it limited reformation of the Madrid policy to pedestrians.

### III. CONCLUSION

Accordingly, we AFFIRM the district court's December 2003 order that (1) reformed the Madrid policy to provide Mr. Clark with P4 benefits; (2) applied a $200,000 aggregate cap to the policy; (3) selected the date of the district court's order as the policy's effective reformation date; and (4) reformed the Madrid policy to include only pedestrians under P4 coverage. We also GRANT Mr. Clark's motion to file a supplemental appendix and DENY his application for reimbursement.