FILED
United States Court of Appeals
Tenth Circuit

October 20, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERTA FOLKS and KIM NGUYEN,
on behalf of themselves and all others
similarly situated,

        Plaintiffs - Appellants,

v.

STATE FARM MUTUAL INSURANCE
COMPANY, an Illinois corporation,

        Defendant - Appellee.

No. 05-1356
D. Colo.
(D.C. No. 04-CV-243-EWN-BNB)

**ORDER**

Before **LUCERO**, **O'BRIEN**, Circuit Judges, and **SILER**, Senior Circuit Judge.[*]

This matter is before the Court on the petition for rehearing en banc and alternative

petition for panel rehearing filed by State Farm Mutual Automobile Insurance Company

(State Farm) on October 29, 2007.

The published opinion in *State Farm Mutual Automobile Insurance Co. v.*

*Boellstorff*, 540 F.3d 1223 (10th Cir. 2008), resolves the issue raised by State Farm in the

present petition. In light of *Boellstorff*, we conclude the present petition contains nothing

that would change the disposition of this appeal.

---

[*] The Honorable Eugene E. Siler, Jr., Senior Circuit Judge, United States Court of
Appeals for the Sixth Circuit, sitting by designation.

We will, however, grant State Farm's alternative petition for panel rehearing in part. The Order and Judgment issued on October 29, 2007, is withdrawn and the attached Order and Judgment which specifically references *Boellstorff*., is substituted therefore. Apart from the changes reflected in the substituted Order and Judgment, State Farm's alternative petition for panel rehearing is denied. The substituted Order and Judgment has been circulated to the Court in light of the still pending request for rehearing en banc. An order will issue on that portion of State Farm's petition following the en banc court's review.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 20, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERTA FOLKS and KIM NGUYEN, on behalf of themselves and all others similarly situated,

Plaintiffs - Appellants,

v.

STATE FARM MUTUAL INSURANCE COMPANY, an Illinois corporation,

Defendant - Appellee.

No. 05-1356
D. Colo.
(D.C. No. 04-CV-243-EWN-BNB)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, Circuit Judges, and **SILER**, Senior Circuit Judge.[1]

Roberta Folks and Kim Nguyen appeal from the district court's grant of summary judgment to State Farm Mutual Automobile Insurance Company. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse as to Folks and affirm as to Nguyen.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]The Honorable Eugene E. Siler, Jr., Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

## I.  Background

A.  <u>The No-Fault Act</u>

In 1973, the Colorado legislature enacted the Colorado Auto Accident Reparations Act ("CAARA" or "No-Fault Act") which governed the sale of automobile insurance in the state.[1]  *See* Colo. Rev. Stat. §§ 10-4-701 through 726.  The purpose of the No-Fault Act was to avoid inadequate compensation to victims of automobile accidents.  *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 553 (Colo. App. 1998).  Under CAARA, automobile insurance policies had to include a basic level of personal injury protection (PIP).[2]  This basic level included:  (a) $25,000 per individual, $50,000 per accident for legal liability coverage and $15,000 for property damage, exclusive of interest and costs; (b) $50,000 for medical services per person for any one accident regardless of fault if performed within five years of the accident; (c) $50,000 for rehabilitative services per person for any one accident regardless of fault if performed within ten years of the accident; (d) reimbursement for up to $400 of gross income per week plus expenses up to $25 a day for fifty-two weeks; and (e) $1,000 in death benefits.  *See* Colo. Rev. Stat. § 10-4-706(1)(a)-(e).  These basic levels applied to "1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle."

_____

[1] The No-Fault Act was repealed on July 1, 2003.  *See* Colo. Rev. Stat. § 10-4-726 (effective July 1, 2003).

[2] Until 2001, the "basic" level of coverage was called "minimum."  *Compare* Colo. Rev. Stat. § 10-4-706(1) (2000 through 2001).

*Brennan*, 961 P.2d at 553; *see also* Colo. Rev. Stat. § 10-4-707(1). In connection with the basic level of coverages, CAARA allowed an insurer to offer managed care options through health maintenance organizations (HMO) or preferred provider organizations (PPO). *See* Colo. Rev. Stat. § 10-4-706(2) (2001).

From 1992 through its repeal in 2002, § 706(3)[3] of CAARA allowed an insurer to offer an "alternative to the minimum coverages" known as a "reduced" PIP policy.[4] *See* Colo. Rev. Stat. § 10-4-706(3) (1992 through 2002). The reduced coverages included: (I) up to $25,000 per person for any one accident for identified types of medical procedures, if performed within five years of the accident; (II) no compensation for rehabilitation; and (III) $5,000 of death benefits. *See* Colo. Rev. Stat. § 10-4-706(3)(b)(I)-(III) (2001). In order to qualify for the reduced coverages, the combined annual gross income of the person applying and their spouse could not exceed 185% of the federal poverty level for a family of four, adjusted upward for family size. *See* Colo. Rev. Stat. § 10-4-706(3)(c)(I). The reduced policy was limited to "the named insured, resident spouse, and resident child." *See* Colo. Rev. Stat. § 10-4-706(3)(f)(I) (2001).

Enacted and repealed at the same time as the reduced PIP coverages, CAARA also

---

[3] Subsections 706(3) and (4) were repealed on July 1, 2002, pursuant to terms of the statute. *See* Colo. Rev. Stat. § 10-4-706(3) & (4) (2002).

[4] From 1992 through 2000, this "reduced" PIP coverage was called "basic." *Compare* Colo. Rev. Stat. § 10-4-706(3) (1992 through 2000). In 2001, the "minimum" coverage found in § 706(1) was renamed "basic" and the "basic" coverage found in § 706(3) was renamed "reduced." *Compare* Colo. Rev. Stat. § 10-4-706(1) & (3) (2001 through 2002).

3

contained a provision which required insurance companies to provide written

explanations of available § 706 coverage options to their insureds:

> An insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy to an insured. After a named insured selects a policy with desired personal injury protection coverage, an insurer shall not be under any further obligation to notify such policyholder in any renewal or replacement policy of the availability of a reduced personal injury protection policy or of any alternative personal injury protection coverage.

Colo. Rev. Stat. § 10-4-706(4)(a) (2001).

Apart from the basic PIP coverages, CAARA also required insurance companies to

offer their insureds optional enhanced PIP benefits in exchange for higher premiums.

Section 10-4-710(2)(a) provided:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical expenses] without dollar or time limitation; or
> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) [medical expenses] without dollar or time limitations and payments of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10-4-710(2)(a) (2003).[5] Though not specified in § 10-4-710 or

elsewhere in CAARA, *Brennan* held these enhanced PIP coverages applied to the same

---

[5] Section 710(2)(b) permitted an enhanced policy to have an aggregate limit of $200,000 for any one person as a result of any one accident.

4

category of people outlined in § 10-4-707(1), including pedestrians. *Brennan*, 961 P.2d at 553.

B. Case Facts

1. *Roberta Folks*

On April 4, 1998, Folks, a pedestrian, was struck by a vehicle driven by State Farm policy holder Charles McCune. The McCune policy, which was issued prior to *Brennan*, did not include enhanced PIP benefits for pedestrians. On April 9, 1998, State Farm sent Folks a letter informing her of the benefits she would receive under the McCune policy, the basic PIP benefits found in § 10-4-706. Folks retained counsel no later than April 16, 1998.[6] State Farm began paying Folks the basic PIP benefits and on April 26, 2000, advised her she had reached the medical benefits limit of $50,000. It gave Folks the option of rolling over her rehabilitation benefits ($50,000) into her medical benefits. Folks elected to rollover her benefits. On July 11, 2002, State Farm advised Folks and her healthcare providers it would no longer be making payments for her PIP-related medical expenses because she had reached the $100,000 limit in combined medical and rehabilitative services.

2. *Kim Nguyen*

On September 27, 1999, Thu-Thi Le purchased an automobile insurance policy from State Farm. Le's policy did not contain a pedestrian limitation and only provided

---

[6] Folks has since retained new counsel in connection with her present claims against State Farm.

the basic PIP benefits. On February 20, 2002, State Farm sent Le a renewal notice together with an informational flyer describing the various optional enhanced PIP coverages available to her. Le did not select any of the enhanced PIP coverages. On July 20, 2003, Le's daughter, Nguyen, was involved in an automobile accident as a passenger in her mother's car. Following the accident, State Farm paid Nguyen's medical and rehabilitative expenses according to the PIP coverages contained in the Le policy.

C. Procedural History

On January 9, 2004, Nguyen filed a complaint against State Farm in Colorado state court asserting claims for breach of contract and bad faith. A month later, State Farm removed the case to federal court. In May 2004, Nguyen filed an amended class action complaint and jury demand adding Folks as a plaintiff and asserted claims for (1) declaratory relief and contract reformation; (2) breach of contract for failure to pay PIP benefits; (3) violation of Colo. Rev. Stat. § 10-4-706(4)(a); (4) statutory willful and wanton breach of contract; and (5) breach of the duty of good faith and fair dealing.

On November 26, 2004, State Farm moved for summary judgment on all of Folks and Nguyen's claims. It argued Folks' claim for bad faith was barred by the applicable statute of limitations contained at Colo. Rev. Stat. § 13-80-102 (two-year statute of limitations). It argued that Folks' remaining claims were barred by the three-year statute of limitations contained in CAARA. *See* Colo. Rev. Stat. § 13-80-101(1)(j). According to State Farm, the statute of limitations began to run on all of Folks' claims on August 24, 1998, the day the *Brennan* decision became final. At that time, Folks knew she would

6

receive only the basic level of PIP benefits and had retained an attorney to represent her with respect to her PIP claim.

As to Nguyen's claims, State Farm argued her first, second, fourth and fifth claims failed because the Le policy did not contain the prohibited pedestrian limitation and Nguyen was not injured as a pedestrian. Thus, she was not entitled to reformation on this basis. State Farm also asserted Nguyen's third claim failed because the written explanation requirement in § 10-4-706(4)(a) did not apply to enhanced PIP benefits under § 10-4-710. Even if the writing requirement applied to the enhanced benefits, State Farm alleged it made a complying offer of enhanced benefits to Le no later than February 20, 2002, when it sent a renewal notice with an explanation of enhanced benefits.

On November 29, 2004, Folks and Nguyen filed a motion for summary judgment with respect to their first, second and third claims. Folks argued State Farm violated § 10-4-710(2)(a) by failing to offer McCune enhanced PIP benefits covering pedestrians and therefore his policy must be reformed to include the maximum amount of enhanced PIP benefits.[7] She also claimed the standard form used by State Farm at the time of her

_____

[7] "[W]hen . . . an insurer fails to offer the insured optional coverage that satisfies the No-Fault Act, additional coverage in conformity with the offer mandated by statute will be incorporated into the policy." *Brennan*, 961 P.2d at 554; *see also Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. App. 1996) ("[W]hen a policy is violative of a statute, reformation is also required to assure that coverage will meet the statutory minimums."). In *Brennan*, because the insurance policy at issue failed to offer enhanced PIP benefits for injured pedestrians and the court determined the No-Fault Act required coverage for such pedestrians, the court ordered the policy reformed to include such coverage. *See Brennan*, 961 P.2d at 554; *see also Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 710 (10th Cir. 2005) (*Clark III*) ("*Brennan* and *Thompson* reformed those insurance policies to include extended pedestrian coverage that insurers should have offered under section 710.").

7

accident in 1998 excluded pedestrians from enhanced PIP benefit coverages in violation of *Brennan*. Nguyen argued State Farm violated § 10-4-706(4)(a) by failing to provide written explanations of enhanced PIP benefits to Le prior to issuing her policy and therefore the policy must be reformed to include the maximum amount of enhanced PIP benefits. In addition to seeking reformation of McCune and Le's policies, Folks and Nguyen claimed State Farm breached these policies by denying them payment of enhanced benefits.

The district court granted summary judgment in favor of State Farm, dismissing all of Folks and Nguyen's claims. The court determined Folks' reformation claim was governed by the equitable doctrine of laches, rather than the statute of limitations, because the claim was equitable in nature. The court held laches barred her reformation claim because she first became aware of the claim on April 16, 1998, when she retained counsel, and waited almost six years to file suit. It further held Folks' bad faith claim was governed by the two-year statute of limitations contained at Colo. Rev. Stat. § 13-80-102, and her remaining claims were governed by the three-year statute of limitations in CAARA. In the end, the court held that all of these claims were barred, as they all accrued on April 16, 1998, and were not tolled by the *Clark* class action. *See Clark v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 00-cv-01841-LTB-PAC (D. Colo.) ("the *Clark* class action").[8] As to Nguyen's claims, the court concluded the written explanation

---

[8] On August 24, 2000, Rickey Eugene Clark brought a class action against State Farm for (1) failure to pay enhanced PIP benefits, (2) breach of the duty of good faith and fair dealing, (3) willful and wanton breach of contract, and (4) deceptive trade practices. *See Clark III*, 433

requirement contained in § 10-4-706(4)(a) did not apply to enhanced PIP benefits under § 10-4-710 and therefore Le's policy could not be reformed as a matter of law. This timely appeal followed.

## II.  Discussion

A.  *Standard of Review*

In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims, "but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1016 (10th Cir. 2001).  Accordingly, "[w]e review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Gwinn v. Awmiller,* 354 F.3d 1211, 1215 (10th Cir. 2004).  "Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)).  However, we may "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (quotation omitted).

B.  <u>Roberta Folks</u>

---

F.3d at 708.  Folks fell within the proposed class definition of *Clark*.

Folks argues the district court erred in concluding her contract reformation claim was barred by laches and her remaining claims were barred by the applicable statutes of limitations. We first determine whether Folks' reformation claim is governed by the equitable doctrine of laches or the statute of limitations. We next determine the accrual date for her claims. Finally, we determine whether the statute of limitations for any of Folks' claims were tolled by the *Clark* class action case.[9]

    1. *Statute of Limitations/Laches*

Folks argues the district court correctly applied laches rather than the statute of limitations to her contract reformation claim, but assigns error to its conclusion laches bars her claim. State Farm asserts the court erred in applying laches to Folks' reformation claim and asserts the three-year statute of limitations for actions arising out of an alleged violation of CAARA applies. Under that statute, State Farm claims Folks' contract reformation claim is untimely.

In a case decided after the district court determined laches applied to Folks' contract reformation claim, we concluded a reformation claim to include enhanced PIP wage-loss benefits is governed by CAARA's three-year statute of limitation under Colo.

_____

[9] On May 16, 2006, Folks submitted supplemental authority under Federal Rules of Appellate Procedure 28(j) which contained a letter from State Farm indicating Folks may be entitled to additional PIP benefits based on our decision in *Clark*. State Farm filed a motion to strike. We reject Folks supplemental authority because it consists of additional factual allegations rather than legal authority, as required by the rule. State Farm's motion to strike is granted.

Rev. Stat. § 13-80-101(1)(j), rather than laches.[10] *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1120 (10th Cir. 2005) ("[T]he district court properly applied CAARA's statute of limitations to Mr. Nelson's claim for reformation because his lawsuit was based on an alleged violation of CAARA and requested benefits."). Folks' reformation claim is based on an alleged violation of CAARA. Although reformation is an equitable remedy, Folks' claim, like Nelson's, "clearly 'arose from' rights exclusively provided under CAARA and from the alleged violation of CAARA." *Id.* at 1121. Therefore, the CAARA three-year statute of limitations applies to Folks' reformation claim. Colo. Rev. Stat. § 13-80-101(1)(j). Folks' remaining claims are also governed by this three-year statute of limitations.[11]

2. *Accrual Date*

Having determined the three-year statute of limitations applies to all of Folks' claims, the next question is when they accrued. State Farm argues they accrued by April 9, 1998, the day Folks was informed she would only receive the basic level of PIP benefits, but in no case later than August 24, 1998, the day *Brennan* became final by

---

[10] Before CAARA's repeal, § 13-80-101(1)(j) stated: "The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within three years after the cause of action accrues, and not thereafter: . . . [a]ll actions under the 'Colorado Auto Accident Reparations Act,' part 7 of article 4 of title 10." Colo. Rev. Stat. § 13-80-101(1)(j) (2002).

[11] The district court applied § 13-80-101(1)(a) to Folks' breach of contract claims (three-year statute of limitation) and § 13-80-102 to her bad faith breach claim (two-year statute of limitation). Section 13-80-101(1)(j), however, is the correct statute to apply to the latter because it arose from the alleged violation of CAARA.

11

operation of the Colorado Supreme Court's denial of a writ of certiorari. Folks claims there is nothing in the record to indicate she discovered or should have discovered State Farm failed to comply with CAARA when it sold the McCune policy without offering enhanced benefits covering pedestrians. Even had she known about this failure to comply, Folks alleges it was not until State Farm breached the contractual and tort duties it owed her and, even then, only when she suffered actual injuries by State Farm's failure to pay further medical benefits in July 2002, that her claims accrued.

Under Colorado law, "[t]he procedure to be utilized in determining when a cause of action accrues is to ascertain when litigation could first have been successfully maintained." *Daugherty v. Allstate Ins. Co.*, 55 P.3d 224, 226 (Colo. App. 2002) (citation omitted). A claim for breach of contract accrues when "the breach is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(6). Because the remainder of Folks' claims are not specifically addressed in Colo. Rev. Stat. § 13-80-108, we look to the catchall provision. "A cause of action for losses or damages not otherwise enumerated in [title 13, article 80] shall be deemed to accrue when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(8). Thus, Folks' claims accrued on the date when she knew or should have known by the exercise of reasonable diligence that State Farm failed to offer enhanced PIP benefits to McCune. *See Nelson*, 419 F.3d at 1121; *Wagner v. Grange Ins. Ass'n*, 166 P.3d 304, 307 (Colo. App. 2007) (distinguishing between accrual

12

dates for personal injury claims and claims based on an alleged statutory violation, breach of contract and bad faith). We agree with the district court that Folks' claims accrued on April 16, 1998.

On January 8, 1998, the Colorado Court of Appeals issued *Brennan*. Four months later, on April 4, 1998, Folks was injured as a pedestrian. State Farm sent Folks a letter on April 9, 1998, informing her what it would pay in connection with the accident. It provided her an outline of the basic PIP benefits and general information about these benefits. The letter referred Folks to the State Farm Car Policy and indicated all PIP benefits were subject to the terms and conditions of that policy. Towards the end of the letter, it reiterated: "The State Farm Car Policy contains duties and obligations. Your understanding of your PIP benefits is important to us. Please call me at 984-6693 if you would like more information or if you have any questions." (Appellant's App. Vol. V at 1371.) Seven days later, Folks retained counsel in connection with her PIP claims.

Based on the above facts, by the time Folks retained counsel on April 16, 1998, she knew or should have known State Farm failed to offer McCune enhanced PIP benefits. *See Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 900 (Colo. App. 2003) ("The requirement that a plaintiff use due diligence in discovering the relevant circumstances or events imposes an objective standard and does not reward denial or self-induced ignorance."). Folks' attorney knew or should have known *Brennan* held reformation of an insurance policy to include enhanced PIP benefits is warranted when an insurer does not offer its insured an opportunity to purchase enhanced PIP benefits covering

13

pedestrians. *See In re Trupp*, 92 P.3d 923, 932 (Colo. 2004) (attorneys are "deemed to have knowledge of the applicable statutes and case law.") (en banc). Folks could have brought a claim for reformation on April 16, 1998, yet she waited over six years. Without reformation of the McCune policy, Folks cannot maintain her breach of contract and related claims. Folks' claims are time barred unless the statutory period is tolled by the *Clark* class action.

### 3. *Class Action Tolling*

The district court concluded Folks was not a member of the *Clark* class, but all parties agree she was a member of the putative class. At the time Folks filed her separate claims, the putative class in *Clark* included: "All injured persons covered under a State Farm automobile insurance policy who were not offered extended coverage as required by C.R.S. § 10-4-710 of the Colorado Auto Accident Reparations Act, and who were not provided the additional benefits provided for therein." (Appellant's App. Vol. I at 210.) On May 14, 2007, after Folks filed her separate claims, Clark filed a motion for class certification with the following proposed class definition: "All pedestrians who received No-Fault benefits under the Colorado State Farm automobile insurance policy where the governing policy documents at the time of the accident were issued prior to January 1, 1999." (*Clark* class action at Doc. 205.) On September 18, 2007, the district court

14

denied Clark's motion for class certification and dismissed the case in its entirety.[12]  (*Id.*

at Doc. 227.)

Folks asserts if the statute of limitations applies to her claims, *Clark* tolls its

running even though *Clark* had not been certified as a class action at the time she filed her

separate claims.  State Farm argues Folks "forfeited" the benefit of class action tolling by

filing this lawsuit before *Clark* was certified.

In *American Pipe & Construction Company v. Utah*, the Supreme Court held,

where class action status has been denied solely because of failure to demonstrate

numerosity, the statute of limitations is tolled during the period of time between the filing

of a class action and the denial of a motion for class certification "for all purported

members of the class who make timely motions to intervene after the court has found the

suit inappropriate for class action status."  414 U.S. 538, 553 (1974).  The Court reasoned

that "[a] contrary rule allowing participation only by those potential members of the class

who had earlier filed motions to intervene in the suit would deprive Rule 23 [of the

Federal Rules of Civil Procedure] class actions of the efficiency and economy of

litigation which is a principle purpose of the procedure."  *Id.*  The Court stated:

> The policies of ensuring essential fairness to defendants and of barring a
>
> plaintiff who has slept on his rights are satisfied when . . . a named plaintiff

---

[12]  We take judicial notice of these latest documents from the *Clark* case.  *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.").

who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*Id.* at 554-55 (citation and quotations omitted).

We recently held the Colorado Supreme Court would join the Second and Ninth Circuits in holding the class action tolling doctrine originally announced in *American Pipe* applies when an individual member of a putative class pursues an independent, individual claim before the district court has decided the class certification issue but after a non-tolled statute of limitations would have run. *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223 (10th Cir. 2008); *see In re WorldCom Securities Litig.*, 496 F.3d 245 (2d Cir. 2007); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008). Thus, Folks may bring her claims with the benefit of tolling and we reverse the

16

portion of the district court's decision which dismissed Folks' claims and remand for further proceedings.[13]

C. Kim Nguyen

At the outset, we note Nguyen was not an injured pedestrian, the Le policy did not contain a pedestrian limitation, and she cannot claim an injury based on pedestrian status. Nguyen, however, argues the district court erred in concluding she was not entitled to reformation of Le's policy based on a violation of Colo. Rev. Stat. § 10-4-706(4)(a) because it only requires insurance companies to provide written explanations of those PIP benefits found in § 706. It is Nguyen's contention that while § 710(2)(a) only requires an insurance company to *offer* enhanced benefits, § 706(4)(a) requires an insurance company to provide written explanations of *all available coverages* prior to issuing any policy to an insured, including the enhanced PIP coverages in § 710(2)(a). State Farm takes the opposite view and argues § 706(4)(a) only requires written explanations of those PIP benefits *set forth in* § 706.

Pure questions of statutory interpretation are reviewed de novo. *Ward v. Allstate Ins. Co.*, 45 F.3d 353, 354 (10th Cir. 1994). The principal task of statutory interpretation is to determine legislative intent. *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo. 1991). A statute should, where possible, be construed according to its plain

---

[13] Like Boellstorff, Folks properly filed an "individual action" before the district court, *Boellstorff*, 540 F.3d. at 1226, when she was added as a co-plaintiff in Nguyen's amended complaint. Although Folks and Nguyen also sought to have their action certified as a class action, this fact provides no principled basis to treat Folks' individual claims differently from Boellstorff's.

17

meaning and, as a whole, giving meaning to all its parts. *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1173 (Colo. 1991); *People v. Terry*, 791 P.2d 374, 376 (Colo. 1990).

"When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). "If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id.* at 1119 (quoting *Comm'r of Internal Revenue v. Bosch's Estate*, 387 U.S. 456, 465 (1967)). The decision of an intermediate appellate state court "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

The Colorado Supreme Court has not ruled on this issue, but the Colorado Court of Appeals has:

> We conclude that the plain language of § 10-4-706(4)(a) requires written explanations of the various basic PIP coverages described in § 10-4-706, but does not apply to other types of coverage described elsewhere in the No-Fault Act, including enhanced PIP coverage described in § 10-4-710. Read in context, the phrase "all available coverages" refers back to the immediately preceding phrase "coverages as set forth in this section," and does not require a written explanation of any other type of coverage, including enhanced PIP coverage, described in other sections of the No-Fault Act.

18

*Munger v. Farmers Ins. Exch.,* --P.3d--, 2007 WL 2003001 * 5 (Colo. App. July 12, 2007). The Colorado Court of Appeals noted its interpretation was consistent with the district court's decision in *Stickley v. State Farm Mutual Automobile Insurance Company*. *Id.* (citing *Stickley v. State Farm Mut. Auto. Ins. Co.*, 402 F.Supp.2d 1226, 1232 (D. Colo. 2005)). We agree with the Colorado Court of Appeals; the plain meaning of § 706(4)(a) only requires insurance companies to provide written explanations of those PIP benefits found in § 706, e.g., reduced benefits, basic benefits or minimum benefits.[14] Nevertheless, Nguyen continues to argue State Farm was required to give written explanations of enhanced PIP benefits to its insureds. Like the Colorado Court of Appeals, we conclude State Farm had no such obligation.

Nguyen argues the Colorado Division of Insurance has interpreted § 706(4)(a) in accordance with her reading of the statute and asserts deference should be given to its interpretation. *See Lucero v. Climax Molybdenum Co.*, 732 P.2d 642, 645-46 (Colo. 1987) ("When courts are faced with a problem of statutory construction, deference should

---

[14] While we do not rely on unpublished decisions as authoritative precedent, we acknowledge a number of Colorado state district courts have reached the same conclusion. *See e.g., Montez v. Am. Family Mut. Ins. Co.*, Case No. 04CV6448, 2005 WL 2893847, *2, n.1 (Colo. Dist. Ct. May 27, 2005) (citing *Dunn v. Am. Family Mut. Ins. Co.,* Denver District Court Case No. 04CV6732 (Apr. 28, 2005); *Cole v. Am. Standard Ins. Co.,* Denver District Court Case. No. 04CV2998 (Feb. 25, 2005); *Almarez v. Guideone Specialty Mut. Ins. Co.,* Boulder District Court Case No. 03CV2013 (Oct. 22, 2004)). Additionally, a number of federal district courts have agreed in unpublished opinions. *See e.g., May v. Travelers Prop. Cas. Co.*, 2006 WL 2784864, *5 (D. Colo. Sept. 26, 2006); *Breaux v. Am. Mut. Ins. Co.*, 387 F.Supp.2d 1154, 1163 (D. Colo. 2005); *Padhiar v. State Farm Auto Ins. Co.*, 2006 WL 517644, *4 (D. Colo. Mar. 2, 2006), *aff'd on other grounds sub nom. Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727 (10th Cir. 2007).

be given to the interpretation given the statute by the officer or agency charged with its administration.").  Nguyen relies on a Market Conduct Examination Report prepared by an independent contractor for the Colorado Department of Regulatory Agencies, Division of Insurance.

Having interpreted § 706(4)(a) based on its plain meaning, we are not faced with a problem of statutory construction.  In *Munger*, the Colorado Court of Appeals disregarded similar Market Examination Reports:

> We do not read these reports, which involve other insurers and are based on information not in the record before us, as unequivocally establishing the Division of Insurance's agreement with plaintiff's position.  In any event, even if the reports could be so interpreted, they would not be dispositive of the issue if they conflict with the plain language of the statute.

2007 WL 2003001 at * 5; *but cf. Soto v. Progressive Mountain Ins. Co.,* --P.3d--, 2007 WL 2128189 (Colo. App. July 26, 2007) (reviewed market conduct examination reports as agency's interpretation because found Colo. Rev. Stat. § 10-4-710(2)(a) ambiguous).

Determining State Farm was not required to provide written explanations of enhanced benefits under § 706(4)(a), Nguyen is not entitled to reformation of Le's policy on that basis and State Farm did not breach the policy.[15]

---

[15]  In the district court Nguyen claimed she was entitled to reformation of Le's policy based on the fact State Farm failed to make Le a sufficient offer of enhanced benefits under § 710(2)(a).  Nguyen has waived her right to bring this issue on appeal because it was not raised in her opening or reply briefs, even after State Farm pointed it out in its answer brief.  *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.")*; Utah Envtl Congress v. Bosworth*, 439 F.3d 1184, 1194 n.2 (10th Cir. 2006) ("An issue mentioned in a brief on appeal, but not addressed, is waived.").

### III.  Conclusion

We affirm as to Nguyen and reverse the district court's dismissal of Folks' claims.

We remand to the district court for further proceedings.

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge

21